IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RALPH JOHN ("TREY") FALLOWS, III, | C.A. No. _____ |
| PLAINTIFF, | |
| vs. | **COMPLAINT**<br>**(Declaratory Judgment & Jury Trial Demanded)** |
| COASTAL CAROLINA UNIVERSITY,<br>MICHELYN PYLILO, individually,<br>and TRAVIS E. OVERTON, individually. | |
| DEFENDANTS. | |
| _____ | |

NOW COMES Plaintiff Ralph John ("Trey") Fallows, III, by and through his undersigned attorney, Thomas C. Brittain, of The Brittain Law Firm, P.A., to respectfully allege as follows:

**PARTIES**

1.     Plaintiff Ralph John (Trey) Fallows, III (hereinafter known as "Trey Fallows") is a citizen and resident of the State of New Jersey.  During the events described herein, Trey Fallows was a full-time student at Coastal Carolina University, located in Horry County, South Carolina.

2.     Defendant Coastal Carolina University (hereinafter known as "CCU") is a public university, located in Horry County, South Carolina.

3.     Defendant Michelyn Pylilo (hereinafter known as "Officer Pylilo") is a citizen and resident of the State of South Carolina, County of Horry.  During the events described herein, Officer Pylilo was an employee of Defendant CCU in her official capacity as an Investigator.

4.     Defendant Travis E. Overton (hereinafter known as "Dean Overton") is a citizen and resident of the State of South Carolina, County of Horry.  During the events described

1

herein, Dean Overton was an employee of Defendant CCU in his official capacity as Dean of Students.

## JURISDICTION AND VENUE

5.     This matter is properly before this Court because it involves issues of federal question relating to Title IX of the Education Amendments of 1972 and 42 U.S. Code § 1983 and their application to due process rights violations during CCU's investigating and adjudicating a sexual assault allegation against Plaintiff Trey Fallows.

6.     This Court has federal question jurisdiction, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and under 28 U.S.C. § 1332 because: (a) Trey Fallows' primary claims are federal questions; and (b) the state law claims are closely related, thereby forming the same "case or controversy" under Article III of the U.S. Constitution.

7.     This Court has personal jurisdiction over Defendant CCU because it conducts business primarily within the State of South Carolina and is a state supported school.

8.     Venue properly lies in the District of South Carolina's Horry Division pursuant to 28 U.S.C. §1391, because all or a substantial part of the events or omissions giving rise to the action occurred in this judicial district and its division, specifically in or around the city of Conway in Horry County, South Carolina.

## THE NATURE OF THIS ACTION AND PROCEDURAL HISTORY

9.     Plaintiff Trey Fallows seeks redress against Defendant CCU and others due to the actions, omissions, errors, flawed procedures, negligence and/or gross negligence and overall bad faith and intentional misconduct which to provide Trey Fallows a meaningful standard of due process and equity, concerning the purported sexual assault allegation of rape made against him.

Plaintiff Trey Fallows, at the time of the events subject to this Complaint, had been a male student at Defendant CCU in good standing, with an excellent reputation.

10. The allegation was made by a female CCU student, Jane Doe, after an evening of brief and aborted consensual sexual intercourse following Jane Doe and Trey Fallows' date, which was arranged by friends of both parties.

11. Trey Fallows, as a result of the 18-month suspension, tantamount to expulsion, has been unable to complete his studies at CCU, with whatever monies spent on obtaining a college education at CCU squandered.

12. In transferring to an equivalent university, substantial academic credits could not be transferred and were thereby lost.

13. Trey Fallows' emotional health has been greatly compromised by the entire ordeal.

14. Based on the foregoing and allegations set forth below, Trey Fallows brings this action to obtain relief based on causes of action for, among other things, violations of both Title IX of the Education Amendments of 1972 and 42 U.S. Code § 1983 and other misconduct as set forth herein.

**FACTS**

15. Plaintiff Trey Fallows is a young man who grew up in a hard-working family of achievement in Haddonfield, New Jersey. One of three children born to Ralph and Maryann Fallows, he grew up working very hard and with an exemplary record. This is a young man who was dutiful in church, civic affairs in school, who without exception, conformed his conduct to the right and the best.

16. He loved golf and came to Coastal Carolina University, as many from New Jersey and other states do, for its excellent golf program, and was thriving there. He was a member of a

fraternity, Sigma Phi Epsilon, highly regarded by his friends and acquaintances and was achieving a fine record both academically and in extracurricular activities at Coastal Carolina University.

17.     It was commonly known by all his friends, and many of his acquaintances that Trey Fallows was completely inexperienced in matters of sex. He was in fact a virgin at the age of 20; he had never had sexual intercourse with anyone prior to the evening at hand.

18.     Pursuant to CCU's Code of Student Conduct when allegations arise, an Investigator is assigned by the university, in this matter, Vice President of Student Rights and Responsibilities and its Dean of Students, Travis E. Overton. In accord with the Student Conduct Handbook, any Investigator assigned by CCU in determining responsibility for charges of sexual misconduct shall have received appropriate training and must maintain complete impartiality during the course of any investigation.

19.     Also, in accord with the Code of Student Conduct, any faculty member serving as a member of a Student Conduct Board to determine charges of sexual misconduct responsibility shall have received appropriate training and must maintain complete impartiality prior to and during any hearing.

**I.  Jane Doe and Trey Fallows Attend an Off-Campus Social Event**

20.     As was customary, his fraternity brothers arranged for an event where Trey and others would have one or more "dates" as invitees to participate and enjoy a social event. Part of the evening included going to a bar, Sharkey's, on the boulevard in Myrtle Beach. Trey and Jane Doe, the date that his fraternity brothers lined up for him, went there together. Trey picked her up with a shy approach; she was much more comfortable in this setting than was he. He drove them to Lackey Chapel on CCU's campus and then traveled to the event in a taxi van along with several others. During the night, she became very friendly with Trey. There were reported

accounts of "sexy" dancing close to one another in a very suggestive manner. A video was taken on a cell phone of them in many significant embraces with heavy petting and kissing while returning from Sharkey's back to campus. This conduct occurred in the presence of other CCU students.

21. Trey Fallows and Jane Doe had consumed a small quantity of alcohol but neither of them were drunk or intoxicated; alcohol was not served to them at Sharkey's.

22. Trey returned Jane Doe to her dormitory area and she invited him "to come up to her dorm room." This was in the later hours of the evening.

23. There is video (CCU surveillance footage) of the two of them in a seemingly jovial mood walking up the steps and headed towards her university housing.

24. Jane Doe's two roommates were in their dormitory rooms, with their doors closed. Jane Doe and Trey Fallows began to heavily pet on a bed/couch within the larger confines of the dormitory setting. She took off her blouse after heavy petting. At some point, she got up and went to the common bathroom that served the dormitory area, in close proximity to the doors of her roommates, without waking them and retrieved a condom. She brought the condom back and gave it to Trey, saying, "You are going to need this." She had no problems walking to the bathroom to find the condom or returning. Trey testified that he had some difficulty, as he called it, "getting the angle right" and as he tried, the condom burst and both of them became concerned about what might have occurred. This was early in the effort. They went to the bathroom. Jane Doe was upset and Trey, in this situation, instead of staying around, left Jane Doe alone (except for the two roommates still apparently asleep).

5

## II. Jane Doe Files False Rape Allegations Against Trey Fallows

25.     Jane Doe later, after drinking alcohol, called "a friend" who attended her. She slept with that male friend and went to the hospital the next day, where among other things, she stated that "this is all my fault" or similar words to that effect, to hospital personnel.

## III. Defendant CCU's Mishandling of Jane Doe's Complaint

26.     Into this set of circumstances comes Michelyn Pylilo, an investigator at CCU, who has a history of disregarding the rights of anyone who has been accused of misconduct of a sexual nature. Upon information and belief, she has bragged about the fact that she will always go the extra mile for the victim and disregard, if necessary, the statements of anyone so accused. She browbeat Trey Fallows into admitting any of the circumstances associated with this matter, none of which indicated that he was guilty in any way, but forcing him to modify his version of events after repeated questioning, all in violation of his constitutional rights with an intention to do him harm and had him arrested upon false accusations when he was clearly innocent in the absence of probable cause. Upon information and belief, this is a pattern for Defendant Pylilo and has occurred on numerous occasions. Further, Dean Overton and CCU officials are aware of her prejudice, improper conduct, and overzealous actions.

27.     Thereafter, Trey posted bond. Both his parents and he had expenses for an attorney, a private investigator, and toxicologist. He sought justice through the CCU process of determining these matters and found none.

28.     Dean Overton, upon information and belief, had no specialized training in the investigation and administrative prosecution of a nonconsensual sex or sexual assault allegation. As an Investigator and CCU state official, Dean Overton showed an ineptitude and/or demonstrated an anti-male gender bias against Trey Fallows in the following manner:

6

      a.      Dean Overton as Investigator, when questioning Trey Fallows throughout the process, his line of questioning was hostile in nature, more akin to cross-examination in tenor to illicit a confession, rather than an objective attempt to factually reconstruct an event;

      b.      Dean Overton as Investigator had been provided the names of several potential witnesses who knew of evidence in exoneration of Trey Fallows (i.e. Trey Fallows' virginity). Specifically, Trey Fallows provided the identities of others at the event, in the taxi van, and at the campus dorm.  These witnesses had observed Jane Doe's interactions with Trey Fallows, providing corroborating evidence of subjective and objective consent.  Several of these witnesses, among others, also had information regarding Jane Doe's experience in such matters.  Despite having all these witnesses and ample time to investigate the matter, Defendant's either refused or failed to properly adjudicate the issues, with the effect of adopting Jane Doe's preposterous claim in spite of the facts;

Further, Dean Overton refused to let Trey Fallows "confront" witnesses, refused to let him get information concerning what the witnesses had said, denied him the right of cross-examination, confrontation of his witnesses, and due process of law.  That Trey Fallows fully participated in this process and was honest throughout.  He further requested that he be allowed to record the hearing at CCU to determine his fate and was denied that opportunity.  With flippancy, Dean Overton's office indicated that "they" would be recording it.  Evidence at the hearing was clearly in Trey Fallows' favor.  His virginity was not questioned, the condom exchange was not in dispute, a highly regarded expert testified that Jane Doe was not intoxicated so as to not consent, the hospital record of her admission was not denied. The deciders, professors and administrators were led by the Dean and the Assistant Dean to a ridiculous decision, suspending Trey Fallows from attendance at Coastal Carolina University, tantamount

7

to expulsion. When Trey Fallows attempted to appeal the hearing result, Coastal Carolina University said they had "lost" the tapes and so it was impossible for him to appeal the decision to the appellate authorities within their system.

29. Furthermore, upon information and belief, this is a pattern for Coastal Carolina University. Defendants Overton and Pylilo and this process has been skewed against certain students with a purpose under similar circumstances on numerous occasions including, but not limited to: Ray Lewis, Trey Fallows and Jared Sayers, among others. There is a predilection to deprive students under these circumstances of their rights in violation of Title IX and Section 42 U.S. Code § 1983. This consistent deprivation of the rights of such students establishes 42 U.S. Code § 1983 violations consistent with the factors under *Monell*. Credibility and character of the accuser is critical when the accused is faced with a charge that amounts to nothing more than "he said, she said." No due process protections are in place.

30. Trey Fallows' 18-month suspension sanction was unwarranted and disproportionate. This is arbitrary and capricious, as well as willful and wanton bad faith conduct by all of the Defendants.

31. Based on the foregoing Trey Fallows' disciplinary record is irrevocably and irreversibly tarnished, as well as the present collegiate academic, athletic career and acceptance into graduate studies programs completely compromised, thereby jeopardizing future career prospects and economic success.

**FOR A FIRST CAUSE OF ACTION**
**(Violation of Title IX of the Education Amendments of 1972)**

32. Trey Fallows repeats and realleges each and every allegation above, as if fully set forth herein.

8

33. Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX of the Education Amendments of 1972, even though there is very little direct federal funding of school sports.

34. Upon information and belief, CCU receives millions of dollars in federal funding for research and development, as well as student financial aid.

35. Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice). Such prohibited actions include all forms of sexual harassment, including non-consensual sexual intercourse, sexual assault, and rape.

36. The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord due process to both parties involved...."

37. The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

   a. "Notice . . . of the procedure, including where complaints may be filed";

   b. "Application of the procedure to complaints alleging [sexual] harassment...";

   c. Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

9

      d.      "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

      e.      "Notice to the parties of the outcome of the complaint..."

      38.      A school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes alleged sexual assaults."

      39.      Based on the foregoing, CCU deprived Trey Fallows, on the basis of his sex, rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of CCU's guidelines and regulations.

      40.      Based on the foregoing, CCU shut Trey Fallows out of the CCU's community by denying a fair process even with denying an appeal based on formality and mishandling the preservation of evidence that was all to Trey Fallows benefit.

      41.      And it did so, without conducting a full and fair investigation to the matter, denying confrontations, full disclosure of information, Dean and Administrator taking sides against Trey Fallows and others like him, refusing to follow Secretary Devos' insistence on improvements as to due process for the accused, advising the "panel" without Trey Fallows' presence, denying Trey Fallows and others the right to have meaningful representation of counsel (not allowed to talk).

      42.      CCU conducted its investigation of Jane Doe's allegation in a manner that was biased against the male being accused. Based on CCU investigators' questions and treatment of Trey Fallows, the investigation was slanted in favor of Jane Doe and took her statements at face-value, while mischaracterizing or disbelieving Trey Fallows' statements. Despite the obvious truth of consensual very brief sexual intercourse (she brought the condom).

10

43. Throughout the process, CCU officials treated Trey Fallows as "guilty before proven innocent."

44. By unlawfully losing, misplacing, or purposely erasing the tapes of the "hearing," Trey Fallows' right to establish his innocence was irrevocably prevented. No independent administration given those facts could have gone along with the conduct of the Defendants Overton and Pylilo, or the panel which always does, and here did, what the Dean insists on.

45. CCU has created an environment in which an accused male student is effectively denied fundamental due process by being prosecuted through the conduct process under the cloud of a presumption of guilt. Such a one-sided process deprived Trey Fallows, as a male student, of educational opportunities at CCU on the basis of his sex.

46. CCU failed and/or refused to follow its own policies and procedures for Trey Fallows as the male accused of sexual assault when it found Trey Fallows responsible for sexual assault in the face of overwhelming facts to the contrary, its failure to interview additional witnesses in support of Trey Fallows' defense, and failure to present any significant evidence of wrongdoing in support of the claim that Jane Doe engaged in non-consensual sex with Trey Fallows, except for Jane Doe's "buyer's remorse" claims in the direct contradiction of the admitted evidence. The Fifteenth Judicial Circuit Solicitor dismissed the resulting charge of criminal sexual conduct in regard to Trey Fallows without even a presentment to the grand jury.

47. CCU's policies effectuate a denial of due process for the student population, especially the male student population, in their current state because they are set up to encourage and facilitate the reporting of false reports of sexual misconduct and/or other grievances without any recourse for the falsely accused, even when overwhelming evidence of innocence is present.

48. Based on the foregoing, CCU imposed sanctions on Trey Fallows that were unwarranted and unjustified and without proper consideration of his clean disciplinary record at CCU, and without providing any written justifiable summary for the basis thereof.

49. Based on the foregoing, upon information and belief, CCU's guidelines and regulations disproportionately affect the male student population of the CCU community as a result of the higher incidence of female complainants of sexual misconduct against male complainants of sexual misconduct.

50. Based on the foregoing, upon information and belief, male respondents in sexual misconduct cases at CCU are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof. Defendant Pylilo is committed to convicting everyone charged, regardless of the evidence.

51. As a result of the foregoing, Trey Fallows is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Violations of Title IX OCR Rules)

52. Each and every allegation set forth herein in the pages of this complaint are reiterated here as if being re-pled. OCR requires colleges to ensure that employees "likely to witness or receive reports of sexual harassment and violence" receive training on practical information about how to identify, report and investigate sexual misconduct.

53. OCR requires colleges to process complaints of sexual misconduct in accordance with its established procedures.

54. OCR requires colleges to engage in the "prompt, thorough, and impartial" investigation of an allegation of sexual misconduct.

55. OCR requires colleges to designate a Title IX coordinator to oversee all Title IX complaints and identify and address any patterns or systemic problems that arise during the review of such complaints.

56. OCR requires colleges to ensure that their Title IX coordinators have adequate training on what constitutes sexual harassment, including sexual violence, and that they understand how the college's grievance procedures operate.

57. OCR requires colleges to utilize adequate, reliable, and impartial investigation of complaints, including an equal opportunity for both parties to present relevant witnesses and other evidence.

58. OCR requires colleges to afford to the complainant and the accused student similar and timely access to any information that will be used at the hearing.

59. OCR requires colleges to maintain documentation of all proceedings, which includes written findings of facts, transcripts or audio recordings.

60. OCR requires colleges to ensure that all employees are trained with respect to applicable confidentiality requirements.

61. OCR requires that all colleges must provide due process to the alleged perpetrator.

62. CCU failed and/or refused to follow its own policies and procedures for Trey Fallows as the male accused of sexual assault when it found Trey Fallows responsible for sexual assault, even in the face of clear evidence of overwhelming nature to the contrary.

63. CCU failed and/or refused to adhere to its own policies and procedures when it failed to follow up on Trey Fallows concerns about Jane Doe's credibility and the credibility of her complaint about the evening in question.

64. CCU has created an environment where an accused male student is fundamentally denied due process by being prosecuted through the conduct process under a presumption of guilt. Such a one-sided process deprived Trey Fallows, as a male student, of educational opportunities at CCU on the basis of his sex.

65. CCU's stated policies and procedures, together with its violations of them thereof only with respect to Trey Fallows as the male accused of sexual assault, demonstrates CCU's gender-biased practices with respect to males accused of sexual assault at CCU, including allowing an admittedly biased security officer to initiate and participate in the process.

66. As a result of the foregoing, Trey Fallows is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE THIRD CAUSE OF ACTION
**(Breach of Contract)**

67. Trey Fallows repeats and realleges each and every allegation hereinabove as if fully set forth herein.

68. Based on the aforementioned facts and circumstances, CCU breached express and/or implied agreement(s) with Trey Fallows.

69. CCU committed several breaches of its agreements with Trey Fallows, including, without limitation "enforcement" of its Code of Student Conduct.

70. The Code of Student Conduct requires, without exception, student participation in the student conduct process and a fair and equal process for both the accuser and the accused.

71. CCU's Student Conduct Handbook and/or its sexual harassment policy include) and procedures, including alleged sexual misconduct, among other things:

"The University does not discriminate on the basis of race, color, national origin, sex age, disability, creed, religion, sexual orientation, or veteran status in

14

admission and access to, and treatment and employment in, its educational programs and activities."

72.     Based on the foregoing, CCU conducted its investigation of Jane Doe's allegation in a manner that was biased against the male being accused. Based on CCU investigators' questions and treatment of Trey Fallows, the investigation was slanted in favor of Jane Doe, her statements were taken at face-value and her admissions, video evidence and clear proof of innocence were disregarded, while mischaracterizing Trey Fallows statements and those of several witnesses. CCU engaged in gender discrimination Trey Fallows.

73.     Defendants Pylilo and Dean Overton were dismissive of relevant evidence between Trey Fallows and Jane Doe.  CCU's decision to exclude exculpatory evidence from its investigation foreclosed Trey Fallows from the opportunity to adequately defend the allegation against him and provided a slanted view of the facts in favor of the complainant.  All she claimed, without denying the condom, her request that he come to her room, the heavy foreplay, obvious intimacy in the presence of others, claiming it was her fault, was that sometime after "it" started she wanted to stop without expressing it.  Further, "it" was a brief and aborted effort.

74.     Pursuant to CCU's sexual misconduct policies and procedures, any Investigator or Student Conduct Board in charge of determining responsibility for charges of sexual misconduct shall have received appropriate training, which upon information and belief was nonexistent and/or inadequate.

**AS AND FOR THE FORTH CAUSE OF ACTION TO ALL DEFENDANTS
COASTAL CAROLINA UNIVERSITY, and
OVERTON and PYLILO, IN AN INDIVIDUAL CAPACITY**
(Violations of 42 U.S. Code § 1983)

75. Each and every allegation set forth herein in the pages of this complaint are reiterated here as if being re-pled as a preface to claims for violations of Trey Fallows' rights as protected pursuant to 42 U.S. Code § 1983. That all Defendants operate under the color of state law.

76. That the failure set forth herein and the violations of Trey Fallows' fifth amendment right against self-incrimination, his right to confront witnesses, his right to an attorney to assist him in a matter of significance, his right to receive full notice of any claims against him. All basic constitutional rights available to all citizens, especially and including those of a tender age, citizens and students of a university. Each and every one was denied in connection with the matters as set forth herein.

77. That his fifth amendment rights, fourteenth amendment rights of due process, right to counsel, right to freedom of speech, first amendment rights, all have been consistently deprived by CCU. CCU's conduct in this matter is of a repeated nature in numerous cases where all of these deprivations as to male students accused under these circumstances have been submitted to a biased and prejudiced security officer and Dean in the administration of these cases. That the *Monell* factors are present, as plead, in regard to the § 1983 violations against CCU, which receives substantial state and federal funding.

78. Further, that Defendant Pylilo as set forth herein has systematically and with intention, deprived Trey Fallows and others of constitutional rights in violation of 42 U.S. Code § 1983 to improperly use techniques to damage him and his testimony, with a improper purpose

16

and bias.  Failure to give him notice of the claims against him, violating his fifth amendment rights, his right to counsel, acting with prejudice towards this accused and others in his position in violation of due process rights of the fourteenth amendment.  Falsely having him arrested.

79.     As to the Defendant Travis Overton, that he oversaw the system set forth herein and with consistent regularity to deprive a male student such as Trey Fallows of his due process rights, his right to counsel, his right to confront his witnesses, his right to present a defense, his first amendment rights, and his right to appeal, all of which are consistent with and result in his violation of the personal constitutional rights of Trey Fallows.

80.     As a direct and foreseeable consequence of the Defendants, each of them, in violation of the rights of the Plaintiff, as set forth herein, Trey Fallows has sustained significant damage to freedom, reputation, incurred expenses, and significant emotional distress.

81.     As a result of the foregoing, Trey Fallows is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

(i) on the First and Second Cause of Action for violation of Title IX of the Education Amendments of 1972 and the Second Cause of Action for violation of OCR Rules, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational, athletic and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii) on the Third Cause of Action for breach of contract, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iii)  on the Forth Cause of Action for violations of 42 U.S. Code § 1983, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and in all regards punitive damages; and

(iv) awarding Plaintiff such other and further relief as the Court deems just, equitable and proper, to include but not limited to punitive damages if allowed.

**THE BRITTAIN LAW FIRM, P.A.**

/s/ Thomas C. Brittain
Thomas C. Brittain, Esq.
(Federal Bar # 04920)
4614 Oleander Drive
Myrtle Beach, SC 29577
(843) 449-8562
(843) 449-6148 Facsimile

April 23, 2019
Myrtle Beach, South Carolina