**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| Ralph John ("Trey") Fallows, III, | ) | **CASE NO. 4:19-cv-01182-JD** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANTS' RESPONSE TO** |
| v. | ) | **PLAINTIFF'S RENEWED MOTION** |
| | ) | **TO REOPEN DISCOVERY** |
| Coastal Carolina University, Michelyn | ) | |
| Pylilo, individually, and Travis E. | ) | |
| Overton, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Coastal Carolina University ("CCU"), Michelyn Pylilo, individually, ("Officer Pylilo") and Travis E. Overton ("Dean Overton"), individually, (collectively, "Defendants") hereby offer this Response to Plaintiff's Renewed Motion to Reopen Discovery ("Renewed Motion").

## <u>INTRODUCTION</u>

Plaintiff opens his Renewed Motion by claiming "[i]t is *indisputable* that [CCU] possesses a document detailing instances of anti-male bias by CCU Department of Public Safety investigators . . . ." [*Entry # 134, p. 1*] (emphasis added). This statement is completely inaccurate. CCU very much disputes that it is in possession of any such document "detailing instances of anti-male bias." The document Plaintiff seeks ("CSC Case Review") does not once mention bias or prejudice based on gender (or any derivations thereof). It does not describe any instances of anti-male bias. It does not once mention Title IX or school disciplinary proceedings.

Plaintiffs are seeking the CSC Case Review based on affidavit testimony from their own witness, Kenneth "Tad" Reed, Jr., given nearly three months *after* discovery closed. Plaintiffs named Reed as a witness sixteen months *before* discovery closed. Plaintiffs were dilatory in questioning their witness while discovery was open, and now ask the Court to allow them to

discover a document that Plaintiff never asked for during discovery, is not responsive to Plaintiff's discovery requests, and is not relevant to Plaintiff's claims. In addition, Plaintiff seeks to serve additional written discovery on Defendants, to depose additional witnesses, and then, Plaintiff seeks to engage in supplemental briefing on Defendants' pending Motion for Summary Judgment, filed on October 3, 2022 (nearly five months ago, more than two months after discovery closed). In other words, this is not merely a motion to compel production of a document Plaintiff argues he previously requested; this is a motion for a wholesale "do-over" in an attempt to survive summary judgment.

For the reasons described below, Defendants respectfully request that the Court deny Plaintiff's Renewed Motion.

## STATEMENT OF FACTS

### I.    *Initial Discovery Requests*

Plaintiff filed this lawsuit on April 23, 2019 [*Entry #1*]. The Court extended the discovery deadline in the scheduling order on five occasions [*Entry # 8, Entry #12, Entry #17, Entry #36, Entry #40*]. Most recently, August 1, 2022 served as the discovery deadline [*Entry #40*]. From inception through August 1, 2022, discovery remained open for more than three years. While discovery remained open, the parties exchanged written discovery and took three depositions. Plaintiff relies on the two discovery requests set forth below, Request for Production No. 3 and Interrogatory No. 8, as the basis for his Renewed Motion:

    3.    Any and all statements, memoranda, reports, documents or other materials which in any way might relate to the Plaintiff's claims, or Defendants' defenses herein which are within the possession or reasonably available to Defendants or Defendants' counsel, whether written, tape recorded or otherwise preserved.

**RESPONSE: Upon the Court issuing a Confidentiality Order, the non-privileged documents being produced are bates DEFS 0000001 – DEFS 000611.**

    8.    Set forth specifically and in full detail all actions, complaints, incidents, and/or violations reported against Michelyn Pylilo during her employment at Coastal Carolina University, along with the entire content of the personnel file for Michelyn Pylilo while employed at Coastal Carolina University.

**ANSWER:    Defendant objects to this Interrogatory on the grounds that it seeks personal and confidential information. Notwithstanding this objection, none.  The Defendant University will not produce any employment records relating to Ms. Pylilo since these records do not relate to any matters in this civil action and these records contain personal confidential information.**

In responding to the above requests, CCU performed a reasonable and good faith search of its available records that would logically relate to a student's claims in a Title IX lawsuit disputing a sexual misconduct disciplinary proceeding. Defendants produced nearly 1,100 pages of documents, along with videos and audios. When discovery closed, Defendants filed a motion for summary judgment on October 3, 2022, which is currently pending before the Court [*Entry #46*].

## II.    *Reed's Affidavit*

More than three months after the expiration of the discovery deadline [*Entry #40*] and exactly one month after Defendants filed their motion for summary judgment [*Entry #46*], Plaintiff filed a Motion to Reopen Discovery on November 3, 2022 [*Entry #67*] ("Original Motion to Reopen"). In the Original Motion to Reopen, Plaintiff alleged there was "newly discovered

evidence," specifically an alleged report identified in Reed's affidavit, which served as the basis for the Original Motion to Reopen [*Entry # 67*].

Reed formerly worked as an employee of CCU in the Department of Public Safety ("DPS") from September 2018 to December 2020[1] [*Entry #69, p. 1*]. According to Reed's affidavit, the alleged new evidence was a report dating back to his "arriv[al]" as an employee at CCU, which according to Reed was in 2018 [*Id., p. 1, p. 3*]. Reed's affidavit consists mostly of conclusory statements and disjointed vagaries. Reed dedicates only four (4) sentences in his three-page affidavit to the alleged report [*Id.*]. Reed states the alleged report consists of a review of criminal investigations—he refers to them as CSC cases[2]—"pending in the Solicitor['s] office" [*Id., p. 3*]. Reed states that the Solicitor's Office dismissed five (5) of the seven (7) pending cases [*Id.*]. Reed's affidavit does not identify the officers involved in investigating the seven (7) sexual assault cases pending in the Solicitor's Office. Reed's affidavit ***does not*** refer to Title IX at all, which is the subject matter of this lawsuit [*Id.*]. Reed's affidavit ***does not*** make any reference to anti-male or gender bias [*Id.*].

Reed is not a new witness. Plaintiff named Reed as a witness on April 1, 2021—more than eighteen (18) months ***before*** filing the Original Motion to Reopen and sixteen (16) months ***before*** discovery closed. [*Exhibit #1: Plaintiff's Supplemental Answer to Defendant's Interrogatories*]. When Plaintiff identified Reed as a witness, he stated Reed possessed "knowledge about the operations of Defendant's public safety and security departments" [*Id.*].

This is a Title IX case, arising from allegations of sexual assault made by one student (Jane Doe) against another (Plaintiff). The alleged sexual assault occurred on April 23, 2017. [*See*

---

[1] The University does not concede these dates are accurate, but these are the dates referenced by Reed in his affidavit.

[2] Presumably, when Reed refers to "CSC cases," he means criminal sexual conduct cases.

*Incident Report*].[3] Officer Pylilo investigated the criminal allegations as an employee of DPS. [*Id.*]. Dean Travis Overton conducted a Title IX investigation into Doe's allegations and prepared a Title IX Report on July 24, 2017. [*See Title IX Report*]. The Student Conduct Board decided whether Plaintiff violated CCU policy. After a hearing, the Student Conduct Board found Plaintiff violated CCU policy, and on October 30, 2017, the Chair of the Student Conduct Board informed Plaintiff of his eighteen-month suspension from CCU [*Exhibit #2: Oct. 30, 2017 letter from SCB*].

The facts in this case span a relatively tight timeline, from April 23, 2017 and ending on October 30, 2017. Importantly, CCU did not employ Reed during this timeframe. In fact, Reed's employment with CCU did not begin until September 2018 [*Entry #69, p. 1*]—more than one (1) year after the Student Conduct Board found Plaintiff in violation of CCU policy. CCU did not employ Reed when Plaintiff attended school.

## III.    *CSC Case Review*

Upon receiving notification of the alleged report described in Reed's affidavit, Defendants' undersigned counsel immediately reached out to Mr. Johnson, CCU's general counsel. After performing a search for the alleged report based on the details described in Reed's affidavit, Mr. Johnson identified the CSC Case Review in November 2022. It is a memorandum from the DPS Deputy Chief to the DPS Chief, dated February 28, 2019. Upon reviewing the document, Defendants' undersigned counsel determined that the CSC Case Review was not responsive to Plaintiff's discovery requests.

On February 9, 2023, the Court held a telephone conference with Plaintiff's counsel and Defendants' counsel to discuss Plaintiff's Original Motion to Reopen. During that telephone

---

[3] Defendants only refer to the Incident Report and the Title IX Report by reference and have not included it with this motion. Defendants previously filed this report under seal with the Court in support of its motion for summary judgment.

conference, Defendants' undersigned counsel disclosed that CCU identified the document described in Reed's affidavit, but determined that it was not responsive to Plaintiff's discovery requests. As such, Defendants did not have a duty to supplement their previous discovery responses. After hearing both parties' arguments about why discovery should or should not be reopened, Judge Dawson directed the parties, if they so wished, to re-brief the Original Motion to Reopen based on the information shared in the telephone conference. Plaintiff filed the Renewed Motion on February 14, 2023 [*Entry # 134*].

## PLAINTIFF HAS NOT SHOWN GOOD CAUSE TO REOPEN DISCOVERY

Plaintiff cannot demonstrate good cause sufficient to reopen discovery. Because there is no good cause, the Court's inquiry should end, and the Court should deny Plaintiff's motion. *See Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va.1995) ("[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.").

Under Rule 16(b)(4), any change to a scheduling order requires "good cause" and the "judge's consent." Fed. R. Civ. Pro. 16(b)(4). Further, under Local Civil Rule 6.01, "[m]otions of extension of time for completion of discovery will be granted only in unusual cases and upon a showing that the parties have diligently pursued discovery during the originally specified period." After the deadlines in a scheduling order have passed, the party seeking to reopen discovery has the burden to demonstrate good cause. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

When determining whether "good cause" exists to modify a scheduling order, "the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel County*, 182 Fed. Appx. 156, 162 (4th Cir. 2006) (citation omitted). The party seeking to modify a scheduling

order must show that the deadline "cannot be met despite the diligence of the party seeking the extension." *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997) (citations omitted). "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Rather, "[l]ack of diligence and carelessness are the 'hallmarks of failure to meet the good cause standard.'" *Summerell v. Clemson Univ.*, No. 8:20-cv-1586-TMC, 2022 U.S. Dist. LEXIS 63146, at *8 (D.S.C. Apr. 5, 2022) (quoting *W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D. W. Va. 2001)). Finally, "[a]ny request for an extension from the parties, is merely that–a request." *Malone v. Greenville County*, No. 6:06-2631-RBH-BHH, 2008 U.S. Dist. LEXIS 33896, at *6 (D.S.C. Feb. 22, 2008).

Outside of the moving party's diligence, the other factors courts consider on motions to reopen discovery are whether: (1) trial is imminent, (2) the motion is opposed, (3) the non-moving party would be prejudiced, (4) the request was foreseeable based on the timeline set by the court, and (5) the new evidence will be relevant to the stated inquiry. *H/S Wilson Outparcels, LLC v. Kroger Ltd. P'ship*, No. 5:15-CV-591-RJ, 2018 WL 1528187, at *3 (E.D.N.C. Mar. 28, 2018); *Vagish LLC v. Seneca Specialty Ins. Co.*, No. 3:13-3161-TLW, 2016 WL 7638133, at *1 (Feb. 5, 2016).[4]

### a. Plaintiff Was Not Diligent

---

[4] Plaintiff mis-cites *Levy v. Lexington County, S.C.*, for the factors a court considers on a motion to reopen discovery. [*Entry # 134, p. 4*]. The considerations set forth by the Fourth Circuit in that case related to whether a court would reopen a case to admit new evidence after trial concluded. *Levy v. Lexington County, S.C.*, 589 F.3d 708, 714 (4th Cir. 2009).

The steps taken by Plaintiff to inquire into the existence of the CSC Case Review do not demonstrate diligence. In an effort to demonstrate diligence in seeking the CSC Case Review, Plaintiff first points to his "kitchen sink" Request for Production # 3, which states:

> Any and all statements, memoranda, reports, documents or other materials which in any way might relate to the Plaintiff's claims, or defendant's defenses herein which are within the possession or reasonably available to defendants or defendants' counsel, whether written, tape recorded or otherwise preserved.

[*Exhibit #3, RFP #3*]. Plaintiff argues this request "was well-tailored to focus on the claims and defenses at issue in this matter." [*Entry # 134, p. 5*]. Hardly.

*Wellin v. Wellin*, 2015 U.S. Dist. LEXIS 135107, at *51-52 (D.S.C.) (July 30, 2015) is instructive to the case at hand. In *Wellin*, the District Court reviewed plaintiff's discovery requests, which sought, in relevant part, "all contact, including in-person visits, telephone calls and electronic or written communications regarding the facts allegations or subject matters at issue in Wellin 1 and/or 2 between any of the Defendants." In reviewing the requests, the Court noted that it "employs language that is so broad it is virtually impossible to determine what documents or communications should be identified and included in a response. It is virtually boundless as to time and subject matter, and is so overbroad as to be unduly burdensome." The District Court added:

> Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request.

*Id.* (quoting *Dauska v. Green Bay Packing Inc.,* 291 F.R.D 251, 261 (E.D. Wis. 2013); *see also*, *Krause v. Nevada Mut. Ins. Co.,* 2014 U.S. Dist. LEXIS 14872 (D. Nev. Feb. 6, 2014) (performing

the same analysis and reaching the same result). Ultimately, the District Court in *Wellin* denied the motion to compel and ordered that no further response was required of the defendants.

Here, like *Wellin*, Plaintiff's request for "[a]ny and all statements, memoranda, reports, documents or other materials which in any way might relate to the Plaintiff's claims" requires Defendants to guess and move through mental gymnastics to decipher what Plaintiff now claims he was seeking. Again, CCU performed a reasonable and good faith search of its available records that would logically relate to a student's claims in a Title IX lawsuit disputing to a sexual misconduct disciplinary proceeding. Defendants produced nearly 1,100 pages of documents, along with videos and audios. For context, CCU has over 2,200 employees (including faculty, full-time staff, and student employees), and nearly 10,500 students. CCU, as a large employer and public university, is the custodian of millions of records. Plaintiff's kitchen sink request was not "well-tailored" for CCU to identify what Plaintiff now seeks. Again, the CSC Case Review does not include any reference to gender or anti-male bias (the words "bias" and "gender" do not appear at all, and the word "male" only appears when describing the source of DNA samples in a particular case). It also does not include any reference to Title IX or CCU student disciplinary proceedings. CCU had no reason to seek or identify this document, and contends that it is not responsive because it does not relate to Plaintiff's claims in this case.

Plaintiff also points to Interrogatory # 8 to assert its diligence in seeking the CSC Case Review. [*Entry # 134, p. 8-10*]. In Interrogatory # 8, Plaintiff inquired about two matters: (i) all actions, complaints, incidents, and/or violations reported against Michelyn Pylilo during her employment at Coastal Carolina University, and (ii) the entire content of the personnel file for Michelyn Pylilo while employed at Coastal Carolina University [*Exhibit #4, Interrogatory #8*]. Plaintiff implies that CSC Case Review is responsive to the first prong of Interrogatory # 8 and

then discusses at length why it is too late for Defendants to object to the first prong of Interrogatory # 8. [*Entry # 134, pp. 8-10*].

To be clear, Defendants are not objecting to the first prong of Interrogatory # 8. Defendants are asserting that the CSC Case Review is not responsive to the first prong. The CSC Case Review is not an <u>action</u>, <u>complaint</u>, <u>incident</u>, and/or <u>violation</u> **reported against** Michelyn Pylilo. It is an internal DPS memorandum generally about the status of Officer Pylilo's investigations and her protected health information. DPS furnished a copy to CCU's general counsel because DPS is a department of CCU and DPS was seeking counsel about how to address issues related to Officer Pylilo's protected health information (not because the CSC Case Review had anything to do with Title IX, as Plaintiff alleges, *see* [*Entry # 134, p. 6*]). The words Plaintiff chose in drafting Interrogatory # 8 simply do not encompass the CSC Case Review.

Importantly, if Plaintiff believed Defendants failed to produce a document in discovery, it was incumbent upon Plaintiff to say so. That's how discovery works. Plaintiff never did that while discovery was open, and Plaintiff waited until after Defendant filed a Motion for Summary Judgment to seek to obtain the CSC Case Review document. When reviewing Defendant's Motion for Summary Judgment, Plaintiff realized he needed additional evidence to attempt to survive it, and **only then**, did Plaintiff reach out to Reed for an affidavit. Only then, after discovery was closed, did Plaintiff take issue with Defendants' discovery responses.

Plaintiff next argues that he could not have possibly requested the CSC Case Review with any specificity while discovery was open because he was not aware of its existence at that time. [*Entry # 134, pp. 6, 10*]. Plaintiff argues that he "cannot control when Mr. Reed remembers and/or discloses relevant information," and that Plaintiff took immediate action upon learning of the alleged report. *Id.* at 10. Plaintiff's argument fails. <u>First</u>, according to the Original Motion to

Reopen, Plaintiff waited until after discovery closed and after Defendants filed their Motion for Summary Judgment before adequately questioning his own witness and learning of the CSC Case Review [*Entry # 67, p. 1*]. If Plaintiff were diligent, he would have sought the information from his witness and elicited the existence of the CSC Case Review during the **sixteen (16) months** when Reed was a named witness during discovery. <u>Second</u>, if Plaintiff believed Reed to be a "reluctant witness" with important information germane to Plaintiff's case (which Plaintiff clearly did, as he sought a summary judgment affidavit from Reed), then Plaintiff had discovery tools he could have employed ***while discovery was open***. Namely, Plaintiff could have subpoenaed and deposed Reed to elicit his testimony. But Plaintiff did not do that. Plaintiff must explain his tardiness in order to carry his burden of demonstrating good cause. *See Charleston Med. Therapeutics, Inc. v. AstraZeneca Pharms. LP*, No. 2:13-CV-2078-RMG, 2015 WL 12805685, at *5 (D.S.C. Mar. 4, 2015). Plaintiff has not done that either.

Finally, in an attempt to misdirect the Court's attention, Plaintiff asserts that it is Defendants who were dilatory. [*Entry # 134, pp. 6-7*]. Plaintiff contends Defendants had a duty to supplement their discovery responses upon becoming aware of the CSC Case Review, and that Defendants are now belatedly objecting to Plaintiff's discovery requests in a bad faith attempt to avoid their discovery obligations. Again, Defendants are not objecting to Plaintiff's discovery requests. Rather, the CSC Case Review is not responsive to Plaintiff's discovery requests. Thus, to allow Plaintiff to reopen discovery now in order to make additional discovery requests and take additional depositions would reward Plaintiff's dilatory behavior.

Ultimately, the steps taken by Plaintiff to inquire into the existence of the CSC Case Review do not demonstrate diligence. Plaintiff conveniently fails to adequately address his failure to inquire into his own witness's testimony in ways which would have uncovered the existence of

the CSC Case Review during the period the Court set for discovery. Had Plaintiff done so, he would have been aware of Reed's allegations regarding CSC Case Review, and he would have then been able to ask for it from Defendants in discovery. Plaintiff never did that. Instead, Plaintiff now attempts to shoe-horn the CSC Case Review into his prior discovery requests to avoid the consequences of his dilatory behavior. Accordingly, the Court should deny Plaintiff's Renewed Motion.

### b.   *Reopening Discovery Is Unlikely to Lead to Relevant Evidence*

Another important factor courts consider on motions to reopen discovery is whether doing so is likely to produce evidence "relevant to the stated inquiry." For the following reasons, reopening discovery to produce the CSC Case Review and related additional testimony/evidence will not lead to relevant evidence.

### i.   **CSC Case Review is Not Relevant to Plaintiff's Title IX Claims**

Plaintiff argues "[e]vidence showing a culture of anti-male bias in CCU's Public Safety Department is important and probative with regard to Plaintiff's Title IX cause of action." [*Entry # 134, p. 5*]. In other words, Plaintiff seeks to demonstrate that Officer Pylilo was biased against males as part of proving his Title IX case, and wants to rely on the CSC Case Review to do so. Reopening discovery for this purpose is unjustified for several reasons.

In order to survive summary judgment on his Title IX claim, Plaintiff must provide affirmative evidence that would allow a reasonable juror to determine that (1) CCU discriminated against Plaintiff on the basis of sex <u>and</u> (2) said discrimination was the "but for" cause of the disputed disciplinary outcome. *See Haley v. Va. Commonwealth Univ.*, 948 F.Supp. 573, 578 (4th Cir. 1996) ("In opposing a properly supported motion for summary judgment, a plaintiff . . . must set forth specific facts showing that there are genuine issues for trial by presenting affirmative

evidence from which a jury might return a verdict in his favor"); *see also Sheppard*, 993 F.3d at 235-36 ("We agree that 'on the basis of sex' requires 'but-for' causation in the Title IX claims alleging discriminatory school disciplinary proceedings.").

With regard to the first prong of demonstrating a Title IX violation, the CSC Case Review would do nothing to establish whether CCU discriminated against Plaintiff on the basis of sex. Officer Pylilo investigated Jane Doe's claims against Plaintiff (but she did not participate in the disciplinary hearing or prepare the Title IX report). Plaintiff admitted in his deposition that he is not aware of any bias on the part of the Student Conduct Board ("SCB") that issued the disputed disciplinary finding, nor is he aware of any violations of CCU's applicable policies related to the ***investigation*** and hearing. [*Exhibit # 5, Plaintiff's Deposition at pp. 134 and 150-151*]. In an attempt to survive summary judgment, Plaintiff claimed for the first time in his summary judgment response memorandum and corresponding summary judgment affidavit that Officer Pylilo excluded exculpatory evidence from the Incident Report she prepared as part of her investigation, that she "tricked" Plaintiff into an interrogation, and that she expressed prejudice against men while interrogating Plaintiff. [*Entry # 70, pp. 2, 31; Plaintiff's Exhibit 2, Plaintiff's Affidavit, ¶ 4*]. Defendants easily debunked each of these claims in their summary judgment reply memorandum with <u>hard evidence</u>. [*Entry # 93, pp. 4-5*]. Because Plaintiff cannot show that Officer Pylilo (or any of the Defendants) discriminated ***against Plaintiff*** on the basis of sex, it is ***irrelevant*** whether Officer Pylilo was generally biased against males (which Defendants do not concede). Thus, even if the CSC Case Review contained the information Plaintiff alleges, discovering it will not lead to relevant evidence.

With regard to the second prong of demonstrating a Title IX violation, Plaintiff has not demonstrated with any specificity that anti-male bias caused the SCB's disciplinary decision, and

the CSC Case Review would not enable Plaintiff to do so. Again, even if Plaintiff's allegations about Officer Pylilo's anti-male bias were true and not based on falsehoods, Plaintiff never connects how Officer Pylilo's alleged anti-male bias caused the disputed outcome in this case. As such, reopening discovery to potentially uncover evidence of Officer Pylilo's alleged anti-male bias would simply not lead to relevant evidence for meeting Plaintiff's burden to demonstrate causation.

For all of the aforementioned reasons, reopening discovery to produce the CSC Case Review and related evidence and testimony will not lead to evidence relevant to Plaintiff's Title IX claims in this case. Therefore, the Court should deny Plaintiff's request to reopen discovery.

### ii.  Officer Pylilo is Immune to Plaintiff's § 1983 Claims

Plaintiff brings one cause of action against Officer Pylilo in her personal capacity, pursuant to 42 U.S.C. Section 1983. [*Entry # 1, ¶ 78*].  As explained more fully in Defendants' Reply on Motion for Summary Judgment, this cause of action cannot go forward. [*Entry # 93, pp. 10-14*].

First and foremost, state officials acting their official capacities are not "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). This Court found that CCU is an arm of South Carolina. *Doe v. Coastal Carolina Univ.*, 359 F.Sup.3d 367, 381 (D.S.C. 2019). Thus, because Officer Pylilo was acting in her official capacity as an employee of CCU when investigating the sexual assault allegation against Plaintiff, Officer Pylilo is not a "person" for purposes of liability under Section 1983.

Second, even if Officer Pylilo acted outside of her official capacity as an employee of CCU when investigating the sexual assault allegation against Plaintiff, she would be entitled to qualified immunity under Section 1983. It is well-established that government officials sued in their personal capacities for violations of federal rights are entitled to qualified immunity if the right

was not clearly established at the time of violation. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021). The Fourth Circuit found in *Sheppard* that the plaintiff-student bringing a Section 1983 claim against a university official in her personal capacity needed to identify a "cognizable property or liberty interest and a deprivation without due process." *Id.* at 239. The Fourth Circuit found that university students do not have a clearly established property right to continued enrollment in higher education, and thus the university official had qualified immunity from the plaintiff-student's claim that the official violated his due process rights in a manner that caused a property right deprivation. *Id.* at 239-240. The issue is the same in this case. Plaintiff did not have a well-established property right in his continued higher education at CCU. Thus, Officer Pylilo has qualified immunity from claims that she violated his due process rights in a manner causing a property right deprivation.

Third, all of Plaintiff's due process allegations are based on a misunderstanding or misapplication of Plaintiff's due process rights. [*Entry # 93, pp. 12-14*] (explaining legal errors in Plaintiff's due process claims). As such, even if Office Pylilo were not immune, Plaintiff's Section 1983 claim against Officer Pylilo could not survive summary judgment.

With Officer Pylilo's clear immunity from Plaintiff's claim, the CSC Case Review will not constitute nor lead to any relevant evidence for that cause of action.

c. *Reopening discovery now would prejudice the Defendants and waste precious time and resources.*

Reopening discovery at this late stage in the proceedings would unduly prejudice the Defendants and waste valuable time and resources. "Rule 16 was drafted to prevent parties from disregarding the agreed-upon course of litigation." *Dilmar Oil*, 986 F. Supp. at 980. This Rule "assures the court and the parties that at some point both the parties and the pleadings will be fixed." *Id*. For this reason, a "scheduling order is not a frivolous piece of paper, idly entered, which

can be cavalierly disregarded by counsel without peril." *Id.* (quoting *Jordan v. E.I. du Pont de Nemours & Co.*, 867 F. Supp. 1238, 1250 (D.S.C. 1994)) (citation omitted). "[F]ederal courts are vigilant and sincere in ensuring predictability for litigants and their attorneys and efficiency for the court and its justice." *Malone v. Greenville County*, No. 6:06-2631-RBH-BHH, 2008 U.S. Dist. LEXIS 33896, at *5 (D.S.C. Feb 22, 2008).

Here, Plaintiff attempts to disregard the agreed-upon course of litigation. The Court set a final discovery deadline of August 1, 2022. [*Entry #40*]. That deadline has long since passed. Now, Defendants' motion for summary judgment is currently pending before the Court. To change the course of litigation at this late stage would be unjust to the Defendants. Defendants have spent considerable time and resources preparing their Motion for Summary Judgment and other pre-trial motions, all the while relying on the fixed discovery deadlines set by the Court. Were discovery to be reopened yet again, the Defendants would be forced to re-do or materially supplement this preparation, costing Defendants considerable time and resources, and further delaying the Court's resolution of the issues in this case. Defendants should not have to suffer due to Plaintiff's carelessness during the discovery period.

Further, reopening discovery would also inject unpredictability and inefficiency into a case that has already lasted over three and a half years. At some point, both the Court and the parties need to be assured that the deadlines in this case are fixed. *See Dilmar Oil Co.*, 986 F. Supp. at 980. When the Court fixed the discovery deadlines, both the Court and the parties were assured that this case would proceed forward, not backwards. With Defendants' Motion for Summary Judgment currently pending, reopening discovery would be unjust to the Defendants and impair the efficient resolution of the issues in this case. Thus, the Court should deny Plaintiff's motion.

### d.  *Other Considerations Related to Reopening Discovery*

The other three factors courts consider also weigh against reopening discovery (imminence of trial, opposition by the non-moving party, and foreseeability of the request to reopen). While no trial date is set, the parties have already submitted numerous pre-trial motions and fully briefed Defendants' summary judgment motion. The case is ripe for trial (if not disposed of on summary judgment). Defendants vigorously oppose Plaintiff's Renewed Motion for all of the reasons explained herein. Finally, Plaintiff's request to reopen discovery months after the more than three-year discovery period closed was not foreseeable at all. Plaintiff has resorted to a desperate tactic to avoid summary judgment, after being unable to produce or unearth any evidence in support of his claims in this case. Reopening discovery at this stage would be an extreme measure, and this Court should decline to reward Plaintiff's dilatory behavior in this way.

## **CONCLUSION**

Based on the foregoing, Plaintiff has not shown good cause to reopen discovery. Plaintiff was dilatory in pursuing the CSC Case Review he now seeks months after discovery closed. For that reason alone, the Court should deny Plaintiff's Renewed Motion. The CSC Case Review is also not responsive to Plaintiff's discovery requests and is not relevant to Plaintiff's claims in this case. To reopen discovery at this stage of the litigation for a non-responsive, irrelevant document would cause significant prejudice to Defendants, in addition to rewarding Plaintiff's procrastination. Accordingly, Defendants respectfully request that the Court deny Plaintiff's Renewed Motion.

In the alternative, if the Court orders Defendant to produce the CSC Case Review document, the Court should neither allow any additional discovery, nor should the Court permit supplemental briefing on Defendants' pending Motion for Summary Judgment. Rather, the Court

should simply include the CSC Case Review document as part of the exhibits pertaining to the Summary Judgment record and rule on the motion.

Dated:  February 28, 2023                    **BURR & FORMAN LLP**

By:     _/s/ James K. Gilliam_____
            James K. Gilliam        (Fed ID 10761)
            104 South Main St., Suite 700 (29601)
            Post Office Box 447
            Greenville, SC  29602
            864.271.4940 (Telephone)
            864.271.4015 (Facsimile)
            jgilliam@burr.com
            *ATTORNEY FOR DEFENDANTS*