IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Ralph John ("Trey") Fallows, III, | ) | CASE NO.: 4:19-cv-01182-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Coastal Carolina University, Michelyn | ) | |
| Pylilo, individually, and Travis E. Overton, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

This is a Title IX lawsuit, sadly, arising out of allegations of sexual misconduct involving a blind date and under-age alcohol consumption made by a Coastal Carolina University ("CCU") student ("Jane Doe" or "Doe")[1] against a fellow CCU student and Plaintiff in this case, Ralph John ("Trey") Fallows, III ("Fallows" or "Plaintiff"). Before the Court are two motions filed by Defendants CCU, Michelyn Pylilo ("Pylilo"), individually (an officer in CCU's Department of Public Safety), and Travis E. Overton ("Overton"), individually (CCU's Dean of Students) (collectively "Defendants"). Defendants have filed a Motion for Summary Judgment (DE 46) seeking to dismiss Fallows's four causes of action in his Complaint.[2] Fallows's Title IX claim is premised (in part) on the assertion that CCU's disciplinary proceedings against him were conducted in a manner that discriminated against him based on his gender. In addition, Defendants

---

[1]  Because of the Family Educational Rights and Privacy Act, no current or former students are named herein except the Plaintiff who is proceeding in his own name.

[2]  The Complaint alleges the following causes of action: 1) Violation of Title IX of the Education Amendments of 1972, 2) Violations of Title IX OCR Rules, 3) Breach of Contract, and 4) Violations of 42 U.S. Code § 1983. (DE 1.) However, Fallows has withdrawn his Breach of Contract cause of action and his § 1983 claim against CCU; therefore, these claims are dismissed without further discussion. (DE 76, p. 30.)

1

have filed a Motion to Strike Affidavits and Documents Relied on in Opposing Motion for Summary Judgment (DE 94). Defendants contend these documents are either inadmissible, they contradict prior testimony, or they should be excluded because they were not provided during discovery. (DE 94.)

The parties have briefed the motions, and therefore, the motions are ripe for review and decision. After reviewing the motions and memoranda submitted, the Court grants Defendants' Motion for Summary Judgment (DE 46) in part and denies in part as provided herein and denies Defendants' Motion to Strike (94) as moot given the Court's ruling on summary judgment for the reasons stated herein.

## BACKGROUND

Fallows enrolled at CCU in August 2015 and completed three consecutive semesters, earning 48 credit hours. (DE 58, pp. 5-6.) While at CCU, Fallows was a member of the Sigma Phi Epsilon fraternity. (DE 58, pp. 7-8.) On the night of April 22, 2017, Sigma Phi Epsilon hosted a party at a bar called Sharkey's in Myrtle Beach. (Id. at p. 12.) Fallows's Big Brother in the fraternity ("Big Brother") set him up on a blind date with Doe for the party. (Id. at p. 16.) The fraternity hosted a "pre-party" gathering, prior to the event at Sharkey's, at a fraternity brother's home, which the fraternity brothers called "the Stables." (Id. at pp. 9-10.)

On his way to the Stables, Fallows picked up Doe at her apartment on the CCU campus at approximately 6:00 p.m. (Id. at p. 13.) Doe was already drinking "a mixed drink" when Fallows arrived. (DE 58, pp. 13, 100.) Fallows and Doe were both minors at the time. (DE 58, pp. 10-11, 15.) As soon as they arrived at the Stables, Big Brother provided Doe with a pre-made alcoholic drink, consisting of Malibu Rum and Gatorade. (DE 58, p. 89.) Fallows saw Doe drink the mix of Malibu Rum and Gatorade along with a couple of mixed vodka drinks. (DE 58, p. 100.) After

seeing the volume of alcohol consumed by Jane Doe, Fallows remarked, "wow, you can drink a lot." (DE 58, p. 82.)

After leaving the Stables, Fallows drove Doe to Lackey Chapel, where he left his car and joined other fraternity members and their dates in taxis to Sharkey's around 7:30 p.m. (DE 58, pp. 86, 100.) Jane Doe reported not remembering much of the taxi ride but remembering kissing Plaintiff during the ride. (DE 58, p. 82.)

Fallows and Doe were separated from one another for an hour or two at Sharkey's. (DE 58, p. 14.) Fallows does not know whether Doe consumed more alcohol while he was separated from her. (DE 58, p. 15.) Four hours later, around 11:30 p.m., Fallows and Doe left Sharkey's, riding in a cab back to Lackey Chapel. (DE 58, p. 100.) Once the two arrived at Lackey Chapel, Fallows drove Doe back to her apartment, and Doe invited Fallows to her room, which he stated he took as an invitation to have sex. (DE 58, pp. 63, 100.) Once inside the apartment, both of Doe's roommates, ("Roommate #1") and ("Roommate #2"), heard Doe enter, and Roommate #2 heard Doe loudly say, "My roommates aren't home." (DE 58, pp. 90, 96.) Roommate #2 believed Doe was intoxicated because she spoke so loudly. (DE 58, p. 96.) Neither roommate heard Fallows, and both assumed Doe was talking on the phone when she made the statement. (DE 58, pp. 90, 96.)

Once inside Doe's apartment, Fallows and Doe made their way to Doe's bedroom. While in her bedroom, Doe reports slipping in and out of consciousness, not being able to move, and having a limp body. (DE 58, p. 80.) Fallows corroborated these allegations and acknowledged that when he initiated intercourse with her, she did not say anything and she was motionless.[3] (DE

---

[3] Before initiating intercourse, Fallows digitally penetrated Doe's vagina and anus. (DE 58, pp. 74, 82.) Fallows also left bruises and scratches on Doe's legs (DE 58, p. 81), and the next day, Doe had red marks and scratches on her face. (DE 58, pp. 62-63, 110.) The combination of his fingers and/or penis left Doe bleeding from her vagina. (DE 58, pp. 74, 83.) Fallows testified that he saw blood and he notice that

3

58, pp. 27-28, 32.)  After Fallows left Doe's apartment, Doe collapsed and began crying, and she called a friend ("Friend") around 12:30 a.m., and reported that she believed she had been raped. (DE 58, p. 62.)  Friend then went to Doe's apartment and observed her to be intoxicated and "unsteady on her feet" and "swaying."  (DE 58, p. 94.)  The next morning, on April 23, 2017, Doe went to the hospital with Friend, her Roommates, and her grandmother to seek treatment for the sexual assault.  (DE 58, p. 62.)

When Doe arrived at the hospital, she presented with red marks and scratches on her face. (DE 58, pp. 62-63, 110.)  At the hospital, the sexual assault nurse examiner documented lacerations and scratches inside of Doe's vagina and on the inside and outside of her thighs.  (DE 58, p. 69.) Conway Emergency Room reported the sexual assault to CCU around 3:00 p.m. on April 23, 2017, and Officer Pylilo reported to the Emergency Room to conduct an initial investigation.  (DE 58, p. 62.)  When Officer Pylilo spoke with Doe at the hospital, she observed an abrasion on Doe's upper lip as well as scratches and red marks on Doe's thighs.  (DE 58, pp. 62, 110-117.)

Officer Pylilo also interviewed Friend and Roommate #1 separately while they were at the hospital.  Friend confirmed arriving at Doe's apartment after she called and reported that she had been sexually assaulted.  (DE 58, pp. 62-63.)  Roommate #1 stated she had not heard anything out of the ordinary the night before, that she had gone to church that morning, and when she came home she observed Doe crying hysterically with visible injuries.  (DE 58, p. 63.)  Roommate #1 convinced Doe to go to the hospital.  (Id.)

On April 24, 2017, Officer Pylilo reviewed video footage from CCU's external cameras to

---

the condom broke and indicated that he "ran away" leaving her apartment.  (DE 58, pp. 18-19, 105.)  The next day, Fallows sent a text to his Big Brother stating: "I f[]cked [Jane Doe]," and "I fingered the sh[]t out of her."  (DE 58, pp. 17, 70, 74.)

capture the timeline of events. (Id.)  The following day, on April 25, 2017, Doe communicated that she wanted to press charges against Fallows. (Id.)  Officer Pylilo then interviewed Doe for a second time.  Doe reported that she was very intoxicated during the incident in question. (Id.)  Doe reported that Fallows noticed she was intoxicated and said, "wow you can drink a lot." (Id.)  On April 25, 2017, Officer Pylilo interviewed Roommate #2 for the first time and interviewed Friend for the second time.  (DE 58, pp. 64-65.)  Roommate #2 additionally confirmed that she saw the abrasion on Doe's lip and bruises and marks on Doe's thighs and neck and that Doe was hysterical the morning after the incident.  (DE 58, p. 65.)  Friend provided CCU with a screenshot of his calls with Doe from the night in question.  (Id.)

The next day, on April 26, 2017, Officer Pylilo interviewed Fallows.  (DE 58, p. 66.)  Fallows indicated that he never asked Doe if she wanted to have sex or if it was ok to have sex, but he believed the encounter to be consensual.[4] (Id.)  Fallows initially stated that Doe never handed him a condom, but that she had it in her hands, and he understood this to mean she wanted to have sex.  (Id.)  Fallows then changed his statement and claimed that Doe gave him the condom and said, "here take this."  (Id.)  Fallows additionally indicated that on a scale of one to ten, with respect to whether he was drunk, he was a four or five (id.) and that he drank eight beers during the approximately 90 minutes he was at the Stables.  (DE 58, p. 100.)

On May 12, 2017, Dean Overton began his own investigation in his capacity as Dean of Students.  (DE 58, pp. 80-104.)  Dean Overton conducted an initial meeting with Fallows that afternoon; Fallows's attorney and his parents were present at this meeting. Fallows presented a signed affidavit to Overton at this meeting in lieu of conducting an interview.  (DE 58, p. 105.)

---

[4]     On May 1, 2017, Officer Pylilo concluded her investigation by interviewing Big Brother.  (DE 58, p. 68.)  During the interview, Big Brother explained that Fallows's intercourse with Doe was "looked upon as a passage to manhood." (Id.)

During the course of his initial investigation, Dean Overton interviewed nine CCU students, including Doe, Fallows, Big Brother, Roommate# 1, and Roommate #2. (DE 58, pp. 80-104.) Dean Overton concluded his investigative report on July 24, 2017, in which he determined there was sufficient evidence to recommend that the Student Conduct Board evaluate the case and charges alleged by Doe to determine possible violations of the Code of Student Conduct by Fallows. (DE 58, p. 104). Dean Overton's report was available to Fallows and his attorney for questions or clarification based on any details within the report. (DE 58, p. 37.)

The Student Conduct Board thereafter held a hearing. (DE 58, p. 106.) The composition of the Student Conduct Board consisted of all men and one woman. (DE 58, p. 22.) Fallows was permitted to present both fact and character witnesses and cross-examine witnesses, and he was allowed to have both his attorney and a support person present during the hearing. (DE 58, pp. 22, 36, 38.) Ultimately, the Student Conduct Board found, based upon all evidence and testimony, that Fallows committed sexual misconduct, in violation of the Code of Student Conduct. (DE 58, pp. 108-109.) As a result of this finding, the Student Conduct Board suspended Fallows from CCU for eighteen months. (DE 58, pp. 108-109.)

## LEGAL STANDARD

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

6

party is entitled to a judgment as a matter of law.'" Id. at 322. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). If the burden of persuasion at trial would be on the nonmoving party "a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp., 477 U.S. at 324. "[T]he burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at 325. "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied . . . ." Id. at 332 (Brennan, J., dissenting).

Accordingly, once the movant has made this threshold demonstration, to survive the motion for summary judgment, pursuant to Rule 56(e), the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citation omitted). Under this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." Wai Man Tom, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., Federal Practice & Procedure

§ 2728 (3d ed. 1998)). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict. Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. See id. at 659-60.

## DISCUSSION

### A. Title IX Claim

Defendants argue they are entitled to summary judgment on Fallows's Title IX violation claim because "Plaintiff, by his own admission, has no evidence that any person who played any role in the investigatory or decision-making process harbored any anti-male bias." (DE 46-1, p. 9.) This Court agrees. "Title IX prohibits federally-supported educational institutions from practicing discrimination on the basis of sex. 20 U.S.C. § 1681(a) ('No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .'). And it is enforceable through an implied private right of action." Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 234-35 (4th Cir. 2021) (internal citation omitted). The Fourth Circuit in Sheppard has determined that "'on the basis of sex' requires *'but-for'* causation in Title IX claims alleging discriminatory school disciplinary proceedings." Id. at 237 (emphasis added). It is undisputed that Pylilo and Overton played active roles in conducting the investigation into the sexual misconduct allegations against Fallows. (DE 58, pp. 59-79, 80-104.) However, Fallows testified that he did not have any evidence that either Dean Overton or Officer Pylilo were

8

biased against men. (DE 58, pp. 29-30.) Furthermore, the Student Conduct Board was the ultimate decision maker on whether Fallows engaged in sexual misconduct, and they decided the penalty to impose on Plaintiff. (DE 58, p. 55.) Fallows testified he did not know the members of the Student Conduct Board, and he further testified that he had no evidence that they were biased against men. (DE 58, pp. 23-24, 30). Therefore, Fallows has not offered any "but for" evidence – that is, because he is male, CCU found that he engaged in sexual misconduct; therefore, Fallows cannot survive summary judgment.

Although Fallows does not refute his uncontroverted testimony, nevertheless, Fallows contends he should otherwise survive summary judgment because 1) CCU has endorsed an anti-male gender-biased view of sexual assault, 2) CCU investigation subjected Doe and Fallows to materially different standards based on gender, and 3) there were procedural flaws that led to the Student Conduct Board's decision that would permit a reasonable juror to infer discrimination and causation based on gender. (DE 76, p. 5.) As to Fallows's claims that CCU has endorsed an anti-male gender-biased view of sexual assault, Fallows principally relies on a poster that he offers for the first time as an attachment to his affidavit in support of his memorandum in opposition to Defendants' motion for summary judgment. In the affidavit, Fallows states that the poster was publicly displayed on CCU's campus before, during, and after the investigation and adjudication of the claims against him.[5] The poster includes the following text:

> Jake was drunk. Josie was drunk. Jake and Josie hooked up. Josie could not consent.
> The next day Jake was charged with RAPE. A woman who is intoxicated cannot

---

[5] Defendants oppose Fallows's affidavit because his statements are not based on his personal knowledge or that he ever saw it while a student at CCU, and the poster was not produced during discovery. See Fed. R. Civ. P. 56(c)(4) (An "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."). Defendants have equally filed a motion to strike the testimony about the poster. (DE 94.) Given the Court's ruling on Fallows's Title IX claim, the Court declines to address this issue.

> give her legal consent to sex, so proceeding under these circumstances is a crime.
> It only takes a single day to ruin your life. Think about it! Be responsible.

(DE 76, p. 12.) Notwithstanding the fact that the poster was not produced during discovery, accepting Fallows's contention that the poster was on campus before, during, and after the investigation does not create a genuine issue of fact in dispute. Rather, Fallows testified that he did not have any evidence that CCU, Overton, or Pylilo harbored any male bias. However, Fallows attempts in his opposition memorandum to paint a different picture. Fallows suggests by legal argument that: "[t]he message contained in the poster could not be clearer – in every instance where a female student and male student are drinking prior to a sexual encounter, CCU considers the male student to be a rapist because a female student who has been drinking cannot consent to sex." (DE 76, p. 12.) While counsel's arguments are not facts, even if the affidavit was offered to contradict Fallows's earlier testimony, it would be rejected. (See DE 146-1, p. 6.) "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). Be that as it may, Fallows's affidavit, unlike his counsel's argument, does not claim CCU, Overton, or Pylilo endorsed the poster's message or that they were guided by its philosophy when investigating or deciding the matter. He just claims that it exists. Accordingly, Fallows has not offered a gender-based but-for causation for his Title IX claim.

In addition, Fallows claims that CCU subjected him and Doe to materially different standards in assessing their competing accounts of the assault, and he notes several procedural flaws in the investigation which he believes, when combined with CCU's finding of misconduct, raises an inference of discrimination and causation based on gender. To that end, Fallows cites Doe v. Washington & Lee Univ., No. 6:19-CV-00023, 2021 WL 1520001, at *15 (W.D. Va. Apr. 17, 2021) for the proposition that an anti-male inference of discrimination and causation can

reasonably be drawn from the facts in this case just like in Doe v. Washington & Lee Univ.[6] As a general rule, absent a violation of a substantive constitutional guarantee, "courts should refrain from second guessing the disciplinary decisions made by school administrators." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 648 (1999) (citing New Jersey v. T. L. O., 469 U.S. 325, 342 n.9 (1985)).

Nonetheless, Fallows, through an exhaustive display of controverted and inconsistent testimony clearly has demonstrated multiple accounts of the same event, which at best shows a factual dispute regarding Doe's and Fallows's accounts of the events and that reasonable minds could differ regarding the credibility of Doe's testimony. (DE 76, pp. 15-29.) However, pursuant to Rule 56(e), to survive summary judgment a plaintiff must designate "specific facts showing that there is a genuine issue for trial" and, in the Title IX context, the facts must show "causation—that is, a causal link between the student's sex and the university's challenged disciplinary proceeding. Sheppard, 993 F.3d at 236; Celotex Corp., 477 U.S. at 324. Again, at best, Fallows has produced evidence of Pylilo bias against individuals accused of sexual assault and in favor of individuals alleging sexual assault; however, Fallows has not identified a gender bias by Overton or CCU.[7]

---

[6] The District Court in Doe v. Washington, denied Washington & Lee University's motion for summary judgment on the plaintiff's Title IX claim because the plaintiff "presented sufficient evidence from which a reasonable jury could conclude that [The University's Harassment and Sexual Misconduct Board's] determination of responsibility was *predicated* on biased assumptions regarding the sexual preferences of men and women." Doe v. Washington & Lee Univ., No. 6:19-CV-00023, 2021 WL 1520001, at *13 (W.D. Va. Apr. 17, 2021) (emphasis added). Fallows has not made a similar connection here.

[7] For example, Fallows points to the fact that Pylilo indicated in her report "[Jane] was reassured that she [w]as believed." (DE 76, p. 15.) In addition, Fallows relies on an affidavit Kenneth W. "Tad" Reed, Jr. ("Reed") (DE 69-1) to support his contention that Pylilo harbored a gender bias while employed at CCU. However, Fallows has not demonstrated how these statements had any impact on Overton investigation or ultimately the Student Conduct Board's disciplinary decision he is contesting. Even if Pylilo harbored feeling of gender bias, Fallows has not shown that these views were adopted by Overton or CCU to support the but-for causation required for successful Title IX claims in the Fourth Circuit.

Fallows's conclusory statements standing alone fail to meet his burden to survive summary judgment, and therefore, his Title IX claim must be dismissed.[8]

### B. 1983 Claims against Overton and Pylilo

Fallows has brought 42 U.S.C. Section 1983 claims alleging his 5th and 14th Amendment rights were violated by Overton and Pylilo in their individual capacities, but asserting that their actions were performed under the color of state law. (DE 1, p. 16.) Defendants have moved to dismiss this claim because they believe there is no evidence to support a Section 1983 claim against them. (DE 46, p. 17.) To be true, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [she] takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985). "In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). "The 'under color of state law' element of a § 1983 claim requires that 'the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State.' As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities

---

[8] In addition, Fallows's Complaint alleges that CCU violated Title IX OCR Rules because among other reasons "CCU failed and/or refused to follow its own policies and procedures" when it found that Fallows committed sexual misconduct, in violation of CCU's Code of Student Conduct. (DE 1, ¶¶ 52-66.) Accordingly, Fallows seeks "damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements." (Id. at ¶ 66.) Defendants have moved to dismiss this claim contending there is no private right of action to pursue monetary damages for alleged violations of OCR Rules and that only the Department of Education can enforce such violations, citing Gebser v. Lago Vista lndep. Sch. Dist., 524 U.S. 274, 292 (1998) ("We have never held, however, that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements."); see also Baynard v. Malone, 268 F.3d 228, 237 (4th Cir. 2001) ("the implied damages remedy is available only when 'the funding recipient engages in intentional conduct that violates the clear terms of the statute.'"). Fallows did not respond or even mention this argument in his Response to Defendants' Motion for Summary Judgement (DE 76). Accordingly, the Court finds as a matter of law that summary judgment is appropriate here and grants Defendants' motion on Plaintiff's OCR Rules Title IX claim.

pursuant to state law.'" Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (internal citation omitted). "Thus, 'to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right,' and 'the plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom.'" Murphy v. Virginia, No. 21-1253, 2022 U.S. App. LEXIS 33667, at *3-4 (4th Cir. Dec. 7, 2022)

With these principles in mind, Fallows contends that Pylilo violated his rights under the 5th Amendment because she did not, among other things, provide him a Miranda warning prior to questioning him. (DE 76, p. 30.) In addition, Fallows claims that Pylilo and Overton violated his 14th Amendment right to due process because Pylilo ignored exculpatory evidence during her investigation of the incident and Overton, among other things, "failed to obtain exculpatory evidence and furnished a report to the adjudicator which wholly disregarded Jane Doe's inconsistencies." (DE 76, p. 32.) Nevertheless, Defendants argue that Pylilo and Overton are entitled to summary judgment on Fallows Section 1983 claims because they were merely investigating the alleged sexual assault. In turn, Defendants argue that Fallows has no evidence in the record to support his Section 1983 claim against them in their individual capacity. (DE 46-1, p. 17.) Defendants' conclusory assertion that Fallows has no evidence is insufficient to discharge their Rule 56 burden of production based on the record before the Court.[9]

"A party may move for summary judgment, *identifying each claim or defense*—or the part of each claim or defense—*on which summary judgment is sought*." Rule 56, Fed. R. Civ. P.

---

[9] Defendants attempt to address this deficiency in their Reply brief (DE 93) as they appear to argue that Pylilo and Overton were operating in their official capacity, and therefore, they are not persons under Section 1983. In the alternative, Defendants raise and argue for the first time they are entitled to qualified immunity (DE 93, p. 11) if they were not acting in their official capacity. Nevertheless, Defendants have not met their initial burden of demonstrating that there is no genuine issue of material fact on these questions; therefore, summary judgment is not appropriate on Fallows's Section 1983 claims. See Celotex Corp., 477 U.S. at 323.

(emphasis added).  The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  "If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record."  Id. at 332 (Brennan, J., dissenting).  Defendants' motion (DE 46) does not identify the constitutional claims raised in Fallows's Complaint (i.e., "fifth amendment rights, fourteenth amendment rights of due process, right to counsel") on which summary judgment is sought.  (DE 1, ¶ 77.)  In fact, Defendants' motion (and memorandum in support thereof) does not even mention Fallows's 5th Amendment claims.  Instead, Defendants rely on their Reply (DE 93) memo to Fallows's Response (DE 76) in opposition to Defendants' motion to address many of Fallows's constitutional claims in his Complaint which were argued by Fallows in his Response memo (DE 76).[10]  Since Defendants have not properly identified each claim or defense on which summary judgment is sought in their motion, Defendants' Motion for Summary Judgment must be denied

---

[10]     As previously noted in footnote 9, Defendants raise for the first time in their Reply brief (DE 93) that they have qualified immunity on Fallows's Section 1983 claims against Pylilo and Overton, which Defendants have asserted in their Answer (DE 6, p. 4).  However, given this affirmative defense was raised in the Reply, Fallows did not have an opportunity to address this legal ground for dismissal in his Response brief.  Since qualified immunity was not identified as a claim or defense on which summary judgment was sought but the defense *may* be dispositive of Fallows's Section 1983 claim at trial, the Court, pursuant to Rule 56(f), Fed. R. Civ. P., hereby notifies the parties that it is considering summary judgment on its own on the issue of whether Pylilo and Overton are entitled to qualified immunity on Plaintiff's Section 1983 claims.

     The Court is exercising its discretion here because it appears there may not be a genuine issue of material fact in dispute regarding whether Fallows has a property interest in continued education at CCU or that he is entitled to protection from the alleged irregularities in CCU's investigation of Doe's sexual misconduct complaint or its failure to give Fallows a Miranda warning.  See Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 239 (4th Cir. 2021); see also United States v. Giddins, 858 F.3d 870, 879 (4th Cir. 2017).

     Accordingly, Fallows is directed to file a supplement memorandum within 15 days of this order, addressing Defendants' contention that Pylilo and Overton are entitled to qualified immunity on Fallows's Section 1983 claims.  Defendants may file a supplemental reply within 7 days after Fallows's supplemental response.

as to Fallows's Section 1983 claims.  See Celotex Corp., 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion.").

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment (DE 46) as to Plaintiff's Title IX causes of action and denies Defendants' Motion to Strike (94) as moot given the Court's ruling on summary judgment.  Further, Fallows is directed to file a supplemental memorandum within 15 days of this order, addressing Defendants' contention that Pylilo and Overton are entitled to qualified immunity on Fallows's Section 1983 claims, and Defendants may file a supplemental reply within 7 days after Fallows's supplemental response.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

June 9, 2023
Florence, South Carolina