# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Ralph John ("Trey") Fallows, III, | ) CASE NO. 4:19-cv-01182-JD |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' SUPPLEMENTAL** |
| | ) **MEMORANDUM OF LAW IN** |
| Coastal Carolina University, Michelyn | ) **SUPPORT OF SUMMARY** |
| Pylilo, individually, and Travis E. | ) **JUDGMENT** |
| Overton, individually, | ) |
| Defendants. | ) |

In response to the Court's order dated June 9, 2023 ("Order") granting summary judgment as to Plaintiff's Title IX claim and requesting supplemental memoranda related to Defendant Michelyn Pylilo's ("Pylilo") and Defendant Travis E. Overton's ("Overton") qualified immunity, Pylilo and Overton (collectively, "Defendants") hereby submit this supplemental memorandum of law in support of summary judgment.

## INTRODUCTION

As noted in the Order, Plaintiff has consistently advanced allegations and arguments in this case that are unsupported by the law and evidence. Plaintiff's Memorandum of Law in Support regarding Defendants' qualified immunity from Plaintiff's Section 1983 claim ("Plaintiff's Memorandum") is no exception.[1] Plaintiff either misapprehends or completely ignores the

---

[1] As a front and center example, Plaintiff claims that Defendants "missed the scheduled deadline to file summary judgment," and therefore the Court should not consider "their tardy motion." (**DE 149, p. 2 n. 1**). On August 17, 2022, the Court granted the parties' Consent Motion to Amend One Deadline in Current Scheduling Order, extending the deadline to file dispositive motions "up to and including October 3, 2022." (**DE 44**). Accordingly, Defendants filed their Motion for Summary Judgment on October 3, 2022 (**DE 46**).

applicable law governing state officials' qualified immunity from Section 1983 claims, and adduces no credible evidence to support his assertions that his constitutional rights were violated. Accordingly, the Court should grant summary judgment to Defendants on Plaintiff's Section 1983 claim.

## STANDARD OF REVIEW

As noted in the Order, "[u]nder Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the movant has made this threshold demonstration, in order to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. "[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020).

## ARGUMENT

On its own initiative (pursuant to FRCP Rule 56(f)), the Court is considering whether Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claim because it "*may be dispositive of Fallows's Section 1983 claim at trial.*" (**DE 147, p. 14 n. 10**).[2] As set forth below,

---

[2] Defendants raised this affirmative defense in their Answer, and addressed it more fully in their summary judgment briefing. (**DE 6, ¶ 20**); (**DE 93, pp. 11-12**). However, the Court found that it

there is an established two-part test for determining whether a plaintiff suing a state official in his individual capacity under Section 1983 can overcome the official's qualified immunity. Plaintiff fails to demonstrate how his Section 1983 claim against Defendants meets the requirements of the two-part test, and therefore Plaintiff is unable to overcome Defendant's qualified immunity.

### I.     Law on Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). Because qualified immunity is an immunity from suit rather than a mere defense, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 231-32. The defendant bears the burden of proof for entitlement to qualified immunity, and the plaintiff bears the burden of proof on whether a constitutional violation occurred. *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007).

Once a defendant has asserted entitlement to qualified immunity, the Supreme Court has set forth a two-part test for determining whether a plaintiff's claim can overcome the defendant's qualified immunity: (1) the plaintiff must have shown (for purposes of summary judgment) a violation of a constitutional right, and (2) the violated right must have been "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (internal quotations omitted); *see also*, *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021). After establishing the two-part test in *Saucier*, the Supreme Court

---

could not grant summary judgment on the issue prior to accepting supplemental briefing from both parties. (**DE 147, p. 14 n. 10**).

clarified in *Pearson* that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

In assessing whether a plaintiff has demonstrated a constitutional violation sufficient to meet the first prong of the two-part test, a plaintiff "must identify a cognizable ***property*** or ***liberty*** interest **and** a deprivation without due process." *Sheppard*, 993 F.3d at 239 (citing *Bd. of Regents of State colleges v. Roth*, 408 U.S. 564, 569-71 (1972)) (emphasis added). In order to meet the second prong of the test, the plaintiff must also be able to show that the cognizable property or liberty interest at issue is "clearly established." *Sheppard*, 993 F.3d at 239-40. In the Fourth Circuit, "[a] right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. The unlawfulness of the official's conduct must be apparent in light of pre-existing law. To be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Booker v. S.C. Dep't of Corrections*, 855 F.3d 533, 538 (4th Cir. 2017) (internal quotations and citations omitted). If a plaintiff cannot show that the constitutional right allegedly violated was clearly established such that reasonable person would have known **or** if the plaintiff cannot adduce evidence that the clearly established right was violated without due process, the government official defendant is entitled to qualified immunity.

## II.     Defendants Were Government Officials Entitled to Qualified Immunity at the Time of the Alleged Constitutional Violations

As a threshold matter, Plaintiff never disputes that Defendants were government officials during the events in question, and therefore would be entitled to qualified immunity absent a

violation of a clearly established constitutional right. However, as the burden is on Defendants to prove their entitlement to qualified immunity, Defendants offer the following evidence:

1. This Court held in *Doe v. Coastal Carolina University* that CCU is an arm of South Carolina. *See*, *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 381 (D.S.C. 2019).

2. Pylilo was an investigator employed by CCU in 2017 when the events in question occurred. (**See Exhibit A** - Pylilo Dep., p. 5, lines 8-18).

3. Overton was the Dean of Students at CCU in 2017 when the events in question occurred. (**See Exhibit B -** Overton Dep. p. 6, lines 6-8).

Based on this evidence, Defendants were government officials entitled to qualified immunity when the alleged constitutional violations occurred.

### III.     Plaintiff's Procedural Due Process Claims under the Fourteenth Amendment Cannot Overcome Defendants' Qualified Immunity

Plaintiff's Memorandum is comprised of sweeping and disorganized allegations of various procedural due process violations. Despite Plaintiff citing the two-part test for overcoming Defendants' entitlement to qualified immunity in his recitation of applicable law, Plaintiff never connects how his allegations of procedural due process violations demonstrate deprivation of a clearly established property or liberty interest. Instead, Plaintiff erroneously argues that the Defendants' alleged procedural due process violations alone are sufficient to overcome Defendants' qualified immunity—but they are <u>not</u> sufficient *unless* Plaintiff has established that those procedural due process violations caused a deprivation of a clearly established property or liberty interest. Moreover, Plaintiffs' procedural due process allegations are completely unsupported by evidence. As noted in the Order, mere arguments by Plaintiff's counsel in a legal memorandum are not tantamount to facts and are insufficient to survive summary judgment absent credible evidence. *See* (**DE 147, p. 10**) (noting "counsel's arguments are not facts").

> ### a. Plaintiff Does Not Have a Liberty or Property Interest in Continued Enrollment at CCU and Therefore His Procedural Due Process Claims Cannot Overcome Defendants' Qualified Immunity

The Court can easily dispose of Plaintiff's Section 1983 claim under the Fourteenth Amendment. Nowhere in Plaintiff's Memorandum does he allege that he was deprived of a protected liberty or property interest by Defendants' alleged procedural due process violations in the CCU disciplinary proceeding. Absent an allegation of a deprivation of a protected liberty or property interest, Plaintiff is unable to meet the first prong of the two-part test to overcome Defendants' qualified immunity from his Fourteenth Amendment claims. *See*, *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7-21-cv-00378, slip op. at 10 (W.D. Va. Feb. 22, 2023) (hereinafter "*2023 Doe v. Va. Tech.*") (plaintiff did not allege a property interest in continued enrollment at the university and therefore did not state a constitutional violation sufficient to overcome a university official's qualified immunity). But even had Plaintiff made this necessary allegation to meet the two-part test for overcoming Defendants' qualified immunity, his claim would still fail under prevailing Fourth Circuit law.

In *Sheppard*, an aggrieved student sued a state university official in his individual capacity under Section 1983 for alleged due process violations related to a school disciplinary proceeding. *Sheppard*, 993 F.3d at 234. In assessing whether the university official was entitled to qualified immunity, the Fourth Circuit determined that it need only analyze the "clearly established" prong of the two-part test to find that the university official was entitled to qualified immunity. *Id.* at 240. The plaintiff in *Sheppard* argued that he had an implied contract with the university under the Student Code of Conduct that created a property interest and that he had an implied property interest in the university's policies and procedures. *Id.* at 239. The Fourth Circuit reasoned that while the Supreme Court and Fourth Circuit had previously assumed ***without deciding*** that a

constitutionally protectable property interest could exist in a student's continued enrollment in a university, in this case, the plaintiff's implied property rights were not "clearly established." *Id.* at 239-40. Thus, the university official was entitled to qualified immunity. *Id.*

Several district courts within the Fourth Circuit have had occasion to examine the issue of a protected property interest in continued university enrollment in the wake of *Sheppard*, and each concluded that the student-plaintiff did not sufficiently demonstrate a clearly established property interest in continued enrollment sufficient to overcome an official's qualified immunity. *See*, *e.g.*, *Doe v. Univ. of Va.*, No. 3:22-cv-00064, 2023 WL 2873379, at *7 (W.D. Va. Apr. 10, 2023) (plaintiff did not demonstrate a protected property interest stemming from a university policy); *2023 Doe v. Va. Tech.*, No. 7-21-cv-00378, slip op. at 10 (even if plaintiff had sufficiently alleged a property interest in continued enrollment at the university, he could not show that the right was clearly established); *Garrett v. Tomas*, No. 1:21-cv-00110-MR-WCM, slip op. at 4-5 (W.D.N.C. Oct. 14, 2021) (plaintiff bears the burden of proving a property interest, but plaintiff made only a "conclusory allegation of a property interest" and did not explain how a particular state regulation could be interpreted to create a property interest).

A few plaintiffs have also asserted a liberty interest in the reputational harm caused by alleged procedural due process violations in a university's disciplinary proceeding. *See*, *e.g.*, *Doe v. Univ. of Va.*, 2023 WL 2873379, at *6; *Doe v. Va. Polytechnic Inst. & State Univ.*, 617 F. Supp. 3d 412, 429 (W.D. Va. 2022) (hereinafter "*2022 Doe v. Va. Tech.*"). The court in these cases found that in order for a plaintiff to assert a constitutionally-protected liberty interest based on reputational harm, the plaintiff must demonstrate that his reputational injury was accompanied by a state action that distinctly altered or extinguished his legal status. *Doe v. Univ. of Va.*, 2023 WL 2873379, at *6; *2022 Doe v. Va. Tech.*, 617 F. Supp. 3d at 429 (both cases citing to *Shirvinski v.*

*U.S. Coast Guard*, 673 F.3d 308, 314-15 (4th Cir. 2012)). In both cases, the court found that the plaintiffs had not demonstrated an alteration or extinguishment of a legal status, as the plaintiffs did not lose a government job and did not establish a statutory right to be a public university student, and therefore had not demonstrated a protectable liberty interest in their alleged reputational harm caused by the university's disciplinary decision. *Doe v. Univ. of Va.*, 2023 WL 2873379, at *6; *2022 Doe v. Va. Tech.*, 617 F. Supp. 3d at 429.

Because Plaintiff did not allege a protectable liberty or property interest deprived by Defendants' actions, he cannot overcome Defendants' qualified immunity from his Section 1983 claim. But even if Plaintiff had made the requisite allegations, his claims would still fail under prevailing precedent in the Fourth Circuit. As such, summary judgment on Plaintiff's Section 1983 claim pursuant to the Fourteenth Amendment is appropriate.

### b. *Plaintiff's Procedural Due Process Claims Are Not Supported by the Evidence and the Law*

Assuming, *arguendo*, Plaintiff had demonstrated a clearly established, constitutionally-protected liberty or property interest in continued enrollment at CCU, Plaintiff did not demonstrate that Defendants' actions amounted to procedural due process violations. Again, in order to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Plaintiff's counsel continue making arguments without any citations to the available evidence in this case. And, in the few instances where Plaintiff's counsel cite to evidence in support of their arguments, they do not connect their allegations and evidence to any cognizable legal claims.

For example, with regard to Pylilo, Plaintiff again asserts without any citation to the available evidence that Pylilo's investigation "began with a lie" because "Pylilo sought out

Plaintiff under the pretext of seeking information related to a missing phone." (**DE 149, p. 4**). Defendants already debunked this claim in their Reply on the Motion for Summary Judgment. (**DE 93, p. 4**) (Plaintiff admitted in his deposition that Pylilo never spoke with Plaintiff prior to the interview and Plaintiff merely had the "suspicion" that Pylilo wanted to talk to him about Jane Doe's missing phone and wallet; *see* **Exhibit C** - Plaintiff's Dep. p. 110, Line 11 – p. 112, Line 10). Plaintiff also asserts without any citation to evidence that Pylilo omitted the "bombshell" exculpatory fact from her investigative report that Jane Doe provided a condom to Plaintiff on the night in question, which "tarnish[ed] the CCU administrative investigation and proceeding." (**DE 149, p. 8**). *Again*, Defendants already debunked this assertion in their Reply on the Motion for Summary Judgment (**DE 93, p. 4**) (Pylilo's Incident Report Supplemental from May 24, 2017 clearly includes the fact that Jane Doe provided Plaintiff with a condom; *see* **Exhibit D** - DEFS 619 – Page 5 of Pylilo's Supplemental Incident Report).

With regard to Overton, Plaintiff makes a number of allegations that are not supported by any citation to evidence and/or are in direct contradiction of the evidence. For example:

1. Plaintiff asserts without any evidence that Overton failed to interview and present Plaintiff's witnesses during the hearing. (**DE 149, p. 9-10**). But Plaintiff admitted in his deposition that there were no witnesses he wanted to call at the hearing that the Student Conduct Board did not allow him to call. (Plaintiff's Dep. p. 132, Lines 15-18). Overton's Title IX investigative report also shows that he interviewed several of Plaintiff's fraternity brothers and Plaintiff's private investigator prior to the hearing. (DEFS 000633-000657). Plaintiff was also allowed to submit five character witness statements to be considered by the Student Conduct Board (DEFS 000663, DEFS 000676 – 000681). Finally, the record shows that during the investigation Plaintiff sent a letter to Overton in response to

Overton's offer to interview additional witnesses. Plaintiff did not provide the name of any additional witnesses that Overton should interview except for Plaintiff's private investigator, who Overton subsequently interviewed. (DEFS 000699).

2. Plaintiff asserts without any evidence that Overton "fail[ed] to allow Plaintiff an attorney at the hearing." (**DE 149, p. 9**). But there are letters to Plaintiff from the Dean of Students Office in the record confirming that Plaintiff was free to bring both an advisor and a support person of his choosing to the hearing. (*See*, *e.g.*, DEFS 000702, 000705). Overton issued an affidavit on October 24, 2017 (the day before the hearing) confirming that students, including Plaintiff, can bring an advisor of their choice to the disciplinary hearing but the advisor cannot actively participate. (DEFS 001041-001042). Plaintiff's parents then sent a letter to Overton on October 25, 2017 (the date of the hearing) complaining that Plaintiff's attorney was not allowed to "actively participate" in the hearing. (DEFS 001015-001016). All of this evidence controverts Plaintiff's assertion that he was not allowed to bring an attorney to his hearing. Rather, Plaintiff wanted his attorney to be able to actively participate in the hearing, but Plaintiff cites no law entitling him to active participation by an attorney in order to receive procedural due process in a school disciplinary hearing.

3. Plaintiff asserts that Overton ignored exculpatory evidence, questioned Plaintiff in a hostile fashion, withheld exculpatory evidence from Plaintiff, and slanted all matters in favor of Jane Doe. (**DE 149, p. 9-10**). Plaintiff cites to no evidence in support of these claims.

4. Finally, Plaintiff asserts that Overton prevented the Plaintiff from recording the hearing, and failed to record or maintain the recording of the hearing. (**DE 149, p. 9**). This is one of the few allegations where Plaintiff cites to some evidence in the record. But this allegation is still deficient. First, Plaintiff cites no right to a recording of the hearing under CCU's

policies or under relevant law. Second, Plaintiff cites no obligation by Overton specifically to record the hearing or maintain the recording. Third, Plaintiff ignores relevant Fourth Circuit precedent stating that even if CCU policy required recording the hearing, "[v]iolations of . . . school procedures are insufficient by themselves to implicate the interests that trigger a federal due process claim." *Sheppard*, 993 F.3d at 239-40 (quoting *Kowalski v. Berkeley Cnty. Schs.*, 652 F.3d 565, 576 (4th Cir. 2011).

Plaintiff has failed to demonstrate any procedural due process violations by Defendants. For this reason, as well as the fact that Plaintiff did not allege a protected liberty or property interest in continued enrollment at CCU, the Court should find that Defendants enjoy qualified immunity against Plaintiff's Section 1983 claim under the Fourteenth Amendment and should grant summary judgment.

## IV. Plaintiff's Fourth and Fifth Amendment Claims Cannot Overcome Defendants' Qualified Immunity

Plaintiff alleges that Pylilo violated his Fourth and Fifth Amendment rights.[3] Plaintiff does not coherently articulate this claim, but it appears to be premised on the idea that Pylilo's actions deprived him of a protected liberty interest. Regardless, Plaintiff provides no *evidence* in support of his Fourth and Fifth Amendment claims and Plaintiff does not articulate the appropriate legal standard for identifying a Fourth Amendment violation. Thus, Plaintiff did not demonstrate a deprivation of a clearly established, constitutionally-protected liberty interest sufficient to meet the two-part test and overcome Defendants' qualified immunity. For that reason, summary judgment should be granted.

---

[3] Notably, neither the Complaint nor Plaintiff's Memorandum in Support of Its Opposition to Defendant's Motion for Summary Judgment ever mention the Fourth Amendment; Plaintiff claims a Fourth Amendment violation for the first time in Plaintiff's Memorandum. However, for purposes of thoroughness, Defendants will address this issue.

### a. *Plaintiff Did Not Demonstrate a Miranda Violation*

Plaintiff claims that "Pylilo violated his constitutional rights in failing to advise him of his *Miranda* rights during a custodial investigation." (**DE 149, p. 3**). However, Plaintiff fails to cite any evidence or make any argument whatsoever to establish that Pylilo's interrogation was custodial. If the interrogation was not custodial, Plaintiff was not entitled to *Miranda* warnings and Plaintiff's Fifth Amendment claim cannot overcome Pylilo's qualified immunity.

Pursuant to the landmark *Miranda* decision and its progeny, "a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in Miranda, regardless of the nature or severity of the offense for which he is suspected or for which he was arrested." *Berkemer v. McCarty*, 468 U.S. 420, 434 (1984). When determining if an interrogation was "custodial," courts look to whether "a suspect's freedom was curtailed to a degree associated with formal arrest." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017) (internal quotations omitted). "Facts relevant to the custodial inquiry include . . . the time, place, and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." *Id.* at 879-80 (internal quotations omitted).

Here, Plaintiff provides no argument or evidence in support of his assertion that Pylilo's interview was custodial. However, the recording of the interview in evidence reflects that Pylilo several times told Plaintiff he was free to leave, Pylilo's demeanor was not threatening, there were not multiple officers present, there is no weapon visible, and there was no physical contact. (DEFS 1061; *see* 2:19:00 and 2:29:50 for examples of Pylilo telling Plaintiff he was free to leave and was not under arrest). Plaintiff also admitted in his Deposition that Pylilo "said I was free to leave at

any time," and that he stayed because he wanted to "square things away."  (Plaintiff's Dep. p. 113, Lines 9-11).

Based on the available evidence, Plaintiff's interview with Pylilo was not custodial. Thus, Plaintiff was not entitled to *Miranda* warnings or presence of counsel as a matter of law, and his Fifth Amendment rights were not violated. Therefore, the Court should grant summary judgment on Plaintiff's Section 1983 claim against Pylilo under the Fifth Amendment.

### b. *Plaintiff Did Not Demonstrate False Arrest or Malicious Prosecution*

Plaintiff argues that "Pylilo withheld material exculpatory information from the State to [sic] a obtain warrant for his arrest" in violation of Plaintiff's "right to personal liberty." (**DE 149, pp. 3-4**). Plaintiff claims that the withheld exculpatory information includes Pylilo's bias against males accused of rape, Plaintiff's statement that Jane Doe handed him a condom before the sexual encounter, and Jane Doe's inconsistent statements about the encounter. (*Id.* **at p. 4 n. 2**). Plaintiff argues that Jane Doe handing Plaintiff a condom "is tantamount to consent" and that "[t]he Horry County Solicitor's Office agreed—dismissing the case upon discovering this undeniable truth and discovering Pylilo had, yet again, misrepresented facts." (*Id.* **at p. 8**). Plaintiff's scant citation to law in support this argument and his failure to cite to any evidence are insufficient to overcome Pylilo's qualified immunity from Plaintiff's Fourth Amendment claims.

### i. <u>Plaintiff Did Not State a Cognizable Fourth Amendment Violation Under Prevailing Law</u>

There is a clearly established Fourth Amendment right to be free from a false arrest. An arrest is a seizure under the Fourth Amendment, and such a seizure is reasonable only if based on probable cause. *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003). Probable cause for an arrest exists where there is a valid warrant or indictment. *Giordenello v. U.S.*, 357 U.S. 480, 487 (1958). The Fourth Circuit has held that "a public official cannot be charged with false arrest when he

arrests a defendant pursuant to a facially valid warrant." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). Further, the Fourth Circuit stated "we recognized implicitly that a claim for false arrest may be considered only when no arrest warrant has been obtained." *Id.* Because Pylilo obtained an arrest warrant in this case, she did not commit a "false arrest" in violation of Plaintiff's clearly established Fourth Amendment rights.

To the extent the Court were to generously view Plaintiff's false arrest claim as tantamount to a claim for malicious prosecution in violation of his Fourth Amendment rights, his claim would still fail. *See*, *e.g.*, *Porterfield*, 156 F.3d at 568 ("To the extent, therefore, that [the Plaintiff] avers that the sheriff's deputies acted unlawfully in arresting him, the allegations must be relevant only to his claim for malicious prosecution."). "The Supreme Court has held that when a police officer acts pursuant to a warrant, he is entitled to qualified immunity if he could have reasonably believed that there was probable cause to support the application." *Id.* at 570 (citing *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)). "Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Porterfield*, 156 F.3d at 569 (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)). Probable cause requires more than "bare suspicion" but requires less than evidence necessary to convict. *U.S. v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). With regard to potentially exculpatory evidence, "an officer is not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 630 (4th Cir. 2007).

In an analogous case to the case at hand, the plaintiff pursued a Section 1983 claim against a police officer grounded in the Fourth Amendment, alleging the officer "ignored exculpatory

evidence and made false statements in support of the warrant application. [The plaintiff] maintains that [the police officer] sought the arrest warrant despite the fact that there were no indicia of probable cause, and [the plaintiff] further maintains that [the police officer]'s misstatements initiated the improper prosecution." *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002). In determining that the police officer was entitled to qualified immunity, the Fourth Circuit stated "the question is not whether there actually was probable cause for the murder warrant against [the plaintiff], but whether an objective law officer could reasonably have believed probable cause to exist." *Id.* at 261-62. The Fourth Circuit found that the police officer "was entitled to disbelieve [the plaintiff]'s alibi," noting that a "reasonable officer, however, was not obliged to credit [the plaintiff]'s exculpatory story." *Id.* at 264. Moreover, the Fourth Circuit found "while the issuance of an arrest warrant does not provide per se evidence of objective reasonableness, a law officer's actions in seeking an arrest warrant and the magistrate's determination of probable cause provide additional support for his claim that he acted with objective reasonableness." *Id.* at 265 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991)).

Here, Plaintiff never argues that Pylilo lacked a reasonable belief that there was probable cause to justify Plaintiff's arrest. In fact, Plaintiff's Memorandum does not once mention the issue of probable cause, which is puzzling because Plaintiff seeks to argue that his arrest was invalid. Instead, Plaintiff argues that Pylilo withheld exculpatory evidence from the prosecutor when seeking the arrest warrant, and therefore Plaintiff's arrest was invalid. As demonstrated above, this argument is not sufficient to overcome Pylilo's qualified immunity from Plaintiff's Fourth Amendment claims. If Pylilo reasonably believed there was probable cause for an arrest and executed a facially valid arrest warrant, then she did not violate Plaintiff's clearly established constitutional rights when she arrested him.

In support of Plaintiff's argument that Pylilo allegedly violated his constitutional rights by withholding exculpatory evidence, Plaintiff cites *Goodwin*.[4] Plaintiff observes that "[t]he Fourth Circuit has noted that '[a] police officer who withholds exculpatory information from the prosecutor can be liable under section 1983.'" (**DE 149, p. 8**) (quoting *Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir. 1989)). But in *Goodwin*, the police officers were subject to liability under Section 1983 for a constitutional violation because they withheld exculpatory evidence from the prosecutor that was discovered during the post-arrest, pre-trial investigation and which eliminated the officers' probable cause to reasonably believe the charged individuals were guilty. *Id.* at 161. Those circumstances are simply not analogous to the case at hand. Plaintiff never alleges that Officer Pylilo lacked probable cause to seek an arrest warrant for Plaintiff, nor that the allegedly withheld exculpatory evidence would have led an objectively reasonable prosecutor or magistrate to find a lack of probable cause for an arrest warrant.

Because Plaintiff has not alleged (much less shown) that Pylilo lacked probable cause or a facially valid arrest warrant, Plaintiff failed to demonstrate a legal basis for his Fourth Amendment claim against Pylilo.

      ii. <u>Plaintiff Did Not Adduce Any Evidence in Support of His Fourth Amendment Claim</u>

In addition to failing to state a legally cognizable Fourth Amendment violation, Plaintiff fails to cite to any evidence that Pylilo withheld exculpatory evidence from the prosecutor or that the prosecutor dismissed the charges upon learning of the purported exculpatory evidence. Plaintiff points to no evidence of what information Pylilo shared or did not share with the Horry County

---

[4] Plaintiff also cites to *Jean v. Rice*, 945 F.2d 82, 87 (4th Cir. 1991), for the proposition that the "government's failure to turn over material impeachment evidence to the defense [is] a violation of the principles of Brady and its progeny." (**DE 149, p. 8**). But Plaintiff never describes or explains what exculpatory information Pylilo withheld from Plaintiff.

Solicitor's Office leading to the arrest warrant. Plaintiff simply *assumes* that in deciding to drop the charges against Plaintiff, the Horry County Solicitor's Office agreed that Jane Doe handing Plaintiff a condom was "tantamount to consent." (**DE 149, p. 8**). But Plaintiff cites to no statements from the Horry County Solicitor's Office or other evidence supporting this assumption. As articulated by the South Carolina Supreme Court, "[b]oth the South Carolina Constitution and South Carolina case law place the unfettered discretion to prosecute solely in the prosecutor's hands." *State v. Thrift*, 440 S.E.2d 341, 346 (S.C. 1994). A decision by the Horry County Solicitor's Office not to prosecute charges against the Plaintiff is not evidence that the arrest was invalid or that the Plaintiff is innocent. It is only evidence of the Solicitor's Office exercising its lawful discretion on which cases to prosecute.

Plaintiff failed to point to any evidence in support of his Fourth Amendment claim against Pylilo. For this reason and because Plaintiff failed to state a cognizable Fourth Amendment violation under prevailing law, Pylilo is entitled to qualified immunity from Plaintiff's claim and the Court should grant summary judgment.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request the Court grant summary judgment on Plaintiff's claim pursuant to 42 U.S.C. Section 1983 on the basis of Defendants' qualified immunity and Plaintiff's failure to adduce evidence in support of his claims creating a genuine issue of material fact.

Dated:  July 5, 2023 **BURR & FORMAN LLP**

By: */s/ James K. Gilliam*
James K. Gilliam        (Fed ID 10761)
104 South Main St., Suite 700 (29601)
Post Office Box 447
Greenville, SC  29602
864.271.4940 (Telephone)
864.271.4015 (Facsimile)
jgilliam@burr.com
*ATTORNEY FOR DEFENDANTS*